## WASHINGTON COUNTY v. SLAUGHTER ET AL.

1. **Mortgage**: RENEWAL OF: PRIORITY OF LIENS. Where upon the renewal of a note the mortgage securing the same was canceled and a new one executed upon the same property, the lien of the second mortgage was held to date only from its execution, as against one who, without actual notice of any claim to the contrary, purchased the property under a judgment which was a lien prior to the date of such execution.

*Appeal from Washington District Court.*

THURSDAY, JUNE 24.

ACTION to foreclose two mortgages given by the defendants J. B. and E. F. Slaughter, to secure the same debt. The plaintiff asks for a decree making the debt a lien upon the mortgaged property from a date antecedent to the date of the mortgages. The defendant Joseph Clyde claims to own the

mortgaged premises by virtue of a sheriff's deed. The court entered a decree in favor of Clyde as to the real estate claimed by him, and ordered that, as to him, plaintiff's petition be dismissed. It also entered a decree in favor of the plaintiff as to a portion of the mortgaged premises, and made the debt a lien from a date antecedent to the date of the mortgages as prayed. Both plaintiff and defendants appeal.

*Dewey & Templin*, for plaintiff.

*McJunkin & Henderson*, for defendants.

ADAMS, CH. J.—The abstract in this case seems to us to be somewhat confused. The petition avers, in substance, that on

1. MORTGAGE renewal: priority of liens.

the 11th day of August, 1868, the defendant J. B. Slaughter borrowed of the School Fund $250, and to secure the same he and his wife, the defendant E. F. Slaughter, executed a mortgage upon the following described real estate: commencing 22 feet north of southwest corner of lot 5, block 19, in original plat of Washington, Iowa, thence east 66 feet, thence north 22 feet, thence west 66 feet, thence south 22 feet to place of beginning. Also the west $\frac{1}{2}$ of south $\frac{1}{2}$ of lot 6, in said block 19. The petition, however, purports to set out a copy of the mortgage, and from the mortgage as thus set out the only property mortgaged appears to have been in lot 5, it being described as "the middle one-third of the south $\frac{1}{2}$ of lot 5, in block 19, in original plat of the town of Washington."

After the execution of this mortgage, whatever it may have covered, to-wit: March 25, 1872, the note given for the loan was renewed. The mortgage was canceled, and a new mortgage was executed upon the 22 feet first above described. Whether that was all there was covered by the first mortgage we are unable to discover. It is assumed in the petition that it was not. It is averred in substance, if we understand the petition, that by mistake the second mortgage failed to cover what was covered by the first mortgage. At all events it is

averred and not denied that on the 13th of May, 1872, a third mortgage was executed covering the west $\frac{1}{2}$ of the south $\frac{1}{2}$ ·of lot 6, in said block 19.

Clyde's sheriff's deed was executed in pursuance of an execution sale made upon a judgment rendered after the execution of the first mortgage, given to secure the original note, and before the execution of the second mortgage given to secure the renewal note. It appears from both the petition and answer that the deed covered all the mortgaged premises, to-wit: The portion of lot 5 covered by the second mortgage, and the portion of lot 6 covered by the third mortgage. He claims the whole premises upon the ground that the sheriff's deed to him was made in pursuance of a sale upon a judgment owned by him, which was a lien upon the entire mortgaged premises, paramount to any lien held by the plaintiff.

But the court below seems to have assumed that he claimed only that portion of the mortgaged premises which is in lot 6, for, while entering a decree in his favor for "the real estate claimed by him," to use the language of the decree, and ordering that the plaintiff's petition be dismissed as to him, it proceeded to give the plaintiff a lien upon that part of the mortgaged premises which is in lot 5, and to date the lien from August 11, 1868, the date of the first mortgage. It appears to us that the court understood that the first mortgage covered no part of lot 6, which must have been the fact if the copy of the mortgage set out is correct. Assuming the copy to be correct the lien of the Clyde judgment was of course paramount to any lien held by plaintiff, so far as lot 6 is concerned.

We have to say, also, that we think that the lien of the Clyde judgment was paramount to any lien held by plaintiff upon that part of the premises in question which is in lot 5.

The plaintiff insists that it is not, because while the original mortgage was canceled and discharged of record, and the second mortgage was executed subsequent to the rendition of the judgment, yet the debt to the plaintiff was not

paid, and that the lien originally acquired should be held to exist as long as the debt does. In *State v. Lake*, 17 Iowa, 219, COLE, J., said: "The mortgage lien remains until the debt is satisfied, and is not affected by a change of the note, or giving a different instrument evidencing the debt, or by a judgment merging the original evidence of indebtedness." The plaintiff relies upon this case as sustaining the rule for which it contends.

If the plaintiff had simply taken a new note, and allowed the original mortgage to stand, the mortgage would have been deemed security for the renewal note, and the lien of the mortgage would have been unaffected by the renewal. This doctrine has become elementary, but it cannot, we think, aid the plaintiff. Where the mortgage remains un-canceled, and undischarged of record, it may well be held to constitute a lien for the unsatisfied debt, and to impart constructive notice thereof to all the world.

The lien of a mortgage, even, which has been discharged may be asserted where it may be done without injustice to anyone, as where the mortgagee has taken a conveyance of the property in satisfaction of the debt, and needs to assert the lien of the mortgage for his just protection and nothing has been done to preclude the supposition that such was his intention. *Stantons v. Thompson*, 49 N. H., 272.

But in the case at bar it appears from the evidence that Clyde not only purchased the judgment after the original mortgage had been discharged of record, but caused the property to be sold upon execution and purchased the same at execution sale, and had no greater knowledge of the plaintiff's claim than was disclosed by the record.

The plaintiff, however, claims that even the record was sufficient to impart knowledge of its claim, because, while it showed that the original mortgage had been discharged, it showed that another mortgage had been given to secure the same debt, and from it the plaintiff should have understood

the lien of the original mortgage was not extinguished. Without expressing any opinion as to what the plaintiff's right would have been if Clyde had actually known that plaintiff claimed that the lien of the original mortgage was not extinguished, we are of the opinion that the record was not sufficient to impart knowledge of such claim. When a person purchases a judgment, or purchases at an execution sale, and sees that a mortgage prior to the judgment has been discharged of record, we think he is not bound to look further to see if possibly the lien of the discharged mortgage may not have been preserved by the execution of another mortgage to secure the same debt. Our attention has been called to no case which so holds, and it appears to us that such is not the law. We think that on the plaintiff's appeal the judgment should be affirmed, and on the defendant's

REVERSED.