SANGER BROS. v. ELY & WALKER DRY GOODS CO. et al. (No. 8926.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 16, 1918. Rehearing Denied Dec. 21, 1918.)

1. SUBROGATION ⚖›1 — NATURE OF DOCTRINE.

"Subrogation" is a doctrine of equity and is the substitution of another person in place of a creditor, so that the person in whose favor it is applied succeeds to the rights of the creditor in relation to the debt.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Subrogation.]

2. SUBROGATION ⚖›23(3) — CANCELLATION OF MORTGAGES—RELEASE.

A creditor, who pays off mortgages on property and takes a new mortgage in the aggregate amount, will be subrogated to the rights of the old mortgagees as against an existing inferior mortgage, although formal releases were made and recorded; the holder of the inferior mortgage, of whom the creditor had no actual knowledge, not being prejudiced thereby.

Appeal from District Court, Eastland County; Joe Burkett, Judge.

Suit by the Ely & Walker Dry Goods Company against Sanger Bros., and others. Judgment for plaintiff, and the above-named defendant appeals. Reversed and rendered.

Coke & Coke, of Dallas, B. L. Russell, of Baird, and R. W. Haynie, of Abilene, for appellant.

Kirby & King, of Abilene, and Theodore Mack, of Ft. Worth, for appellees.

CONNER, C. J. Stating them in their chronological order, the facts in this case are substantially and briefly as follows: On January 19, 1910, W. D. Boydstun purchased a tract of 111½ acres of land from H. C. McGowen, and in part payment of the purchase money he gave McGowen 3 vendors' lien notes for the sum of $912.50 each. One H. W. Ross thereafter became the owner of these notes, and this debt will be herein-

after referred to as the "Ross debt." On October 20, 1912, W. D. Boydstun, having theretofore become indebted to Sanger Bros. for merchandise, executed to said Sanger Bros. 13 notes, aggregating $10,597.98, and secured the same by a deed of trust, later duly recorded, upon the 111½ acres of land purchased from McGowen, and also upon another tract of land of 58 acres owned by Boydstun. Thereafter on February 10, 1914, Boydstun executed a note for $1,000, payable to A. S. Witherspoon, and secured the same by a deed of trust on the 58-acre tract of land above mentioned. Both the Sanger Bros. deed of trust and the Witherspoon deed of trust were duly recorded in Callahan county, where the several tracts of land were located. Thereafter, on December 2, 1914, W. D. Boydstun executed and delivered to Ely & Walker Dry Goods Company, appellees in this case, 6 promissory notes, aggregating $4,135.93, and gave a trust deed securing said notes on the two tracts of land hereinbefore mentioned. This trust deed was also duly recorded in Callahan county.

This suit was filed on April 21, 1917, against W. D. Boydstun on the six promissory notes payable to appellees in this case, as above stated, and to foreclose their trust deed lien. One R. L. Surles and Sanger Bros. were made defendants under an allegation that they were asserting rights in the land. The record fails to show that Surles answered, but Sanger Bros. did so, alleging that they held a first lien on the lands above described, secured by four notes for $3,500 each, dated November 1, 1915, due one, two, three, and four years respectively thereafter, being purchase-money notes given by said Surles to said Boydstun, and by the latter transferred to them, which notes they alleged were given for the purpose of taking up the liens prior to plaintiffs' and to which prior liens they were or should be subrogated. The plaintiffs, Ely & Walker Dry Goods Company, replied that the prior liens mentioned by Sanger Bros. had been paid off, discharged, and released, and that plaintiffs' lien thereby as a matter of law had been advanced to first place.

A trial before the court without a jury resulted in a judgment for the plaintiff for its debt, with foreclosure as prayed for; the court holding that Sanger Bros. were not entitled to subrogation as by them sought. The court filed his conclusions of fact and law, and Sanger Bros. alone have appealed.

In addition to the facts above stated, the court found that on October 27, 1915, W. D. Boydstun arranged to sell to R. L. Surles the lands in controversy in this suit, and that at the time of the contract of sale Sanger Bros. and Boydstun agreed with Surles that they would pay off and cause to be paid off and discharged all the liens

⚖›For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and incumbrances then outstanding against the land; it being further agreed at the time that Surles would give Boydstun $14,000 in vendors' lien notes against the land, said notes being four in number, and each to be in the sum of $3,500, payable in one, two, three, and four years from the consummation of the trade. It was then further agreed with Sanger Bros. that he (Boydstun) would transfer the vendor's lien notes received by him from Surles to Sanger Bros., and Sanger Bros. agreed to accept such vendor's lien notes in full settlement and satisfaction of any and all claims and liens theretofore held by them against W. D. Boydstun or against the property sold to Surles; the sum of $14,-000 being the sum total of all the indebtedness then owing to Sanger Bros., including the amount of the Ross debt and of the Witherspoon debt, hereinbefore mentioned.

The court further found that this agreement was duly consummated; that at the time of the sale the distinct understanding on the part of Boydstun, Surles, and Sanger Bros. was that Surles should take the land free of all incumbrances save the incumbrances created by the execution of the Surles notes, which were to constitute in favor of Sanger Bros. a first and only lien; that the plaintiffs in the case, Ely & Walker Dry Goods Company, were not parties to this agreement and had no knowledge of it; that Sanger Bros. were without actual knowledge of the plaintiffs' lien in the case. The findings and undisputed facts further show that Sanger Bros. advanced the money to pay off the Ross and Witherspoon debts, releases therefrom being acquired and recorded, and that they also executed in due form a release of the merchandise debt due them from Boydstun, all of which releases were duly placed on record.

The court concluded that the effect of the payment of the Ross and Witherspoon liens and Sanger Bros. merchandise debt, with the formal releases therefrom, wholly discharged said debts and, in effect, thus advanced plaintiffs' lien to first place and constituted it superior to any lien or right of Sanger Bros.

While, of course, under our registration statutes both Surles and Sanger Bros. had constructive notice of plaintiffs' lien, it is undisputed that they had no actual knowledge thereof. It nowhere appears in the findings or in the evidence that the Ely & Walker Dry Goods Company's debt was mentioned by Boydstun or any other person during the negotiations between Boydstun, Surles, and Sanger Bros. that culminated in the Surles purchase, and the good faith of this transaction is in no wise assailed. We infer from the court's findings and from appellees' brief filed in this court that, inasmuch as Surles purchased the land with the distinct understanding and agreement that it was to be free from all liens, he (Surles) would have the right to so treat the purchase. But we are not called upon to determine the rights of Surles to the land in controversy, or determine what, if any, remedy he might have against Sanger Bros., for he failed to answer below, and there is no appeal upon his part from the judgment of the court as rendered. All inquiry, therefore, is limited to a determination of the relative rights of appellants, Sanger Bros., and of the appellees, Ely & Walker Dry Goods Company. As between these parties, at least, we think the court was in error in his conclusions and judgment.

[1, 2] It is not to be doubted, under the record in this case, that the debts actually paid off and released by Sanger Bros. at the time of the sale to Surles equaled the amount of the vendors' lien notes given by Surles to Boydstun and by Boydstun transferred to Sanger Bros.; nor can it be doubted from the record that the purpose of Sanger Bros. was that the previously existing indebtedness should be continued and evidenced in the differing form of the Surles notes. "Subrogation" is a doctrine of equity; it is a substitution of another person in the place of the creditor, so that the person in whose favor it is applied succeeds to the rights of the creditor in relation to the debt. The substitute is put in all respects in the place of the party to whose rights he is subrogated. See Sheldon on Subrogation, §§ 1 and 2; 37 Cyc. 363, par. A. Again, it is said in Am. & Eng. Enc. of Law, vol. 27, p. 247, that—

"One who advances money to pay off an incumbrance on realty at the instance of either the owner of the property or the holder of the incumbrance, either on the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer, and, in the event the new security is for any reason not a first lien on the property, the holder of such security, if not chargeable with culpable and inexcusable neglect, will be subrogated to the rights of the prior incumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby, and to this end equity will set aside a cancellation of such security, and revive the same for his benefit."

In Bank v. Ackerman, 70 Tex. 320, 8 S. W. 47, it is said, among other things, that—

"'The true principle * * * is that, when money due on a mortgage is paid, it shall operate as a discharge of the mortgage, or in the nature of an assignment of it, substituting him who pays in the place of the mortgagee, as may best serve the purposes of justice and the just intent of the parties.' * * * And it makes no difference, in either of these classes, whether the party, on the payment of the money, took an assignment of the mortgage as a release, or whether a discharge was made and the evidence of the debt canceled. * * * The debt itself

may be held still to subsist in him who paid the money as assignee, so far as it ought to subsist, in the nature of a lien on the land, and the mortgage be considered in force for his benefit, so far as he ought, in justice, to hold the land under it, as if it had actually been assigned."

See, also, Hicks v. Morris, 57 Tex. 658; Dillon v. Kauffman & Runge, 58 Tex. 696; Park v. Kribs, 24 Tex. Civ. App. 659, 60 S. W. 905.

Applying these principles, it can make no difference that Sanger Bros. took to them no formal assignments of the Ross and Witherspoon debts and executed formal releases of their own pre-existing mortgage. The Ross and Witherspoon debts were paid by Sanger Bros., and their mortgage release in ignorance of appellees' mortgage and their claim. It was shown that Sanger Bros. would not have so performed had they known of appellees' mortgage, and we think that in equity, so far as may be necessary, Sanger Bros. should be subrogated to the rights evidenced by the formal liens discharged by them. Appellees certainly are in no worse condition than they were prior to the sale to Surles, for at that time it is unquestioned that the preceding liens were superior in point of time and right. See Fears v. Albea, 69 Tex. 437, 6 S. W. 286, 5 Am. St. Rep. 78; Whiteselle v. Texas Loan Agency, 27 S. W. 309; Jones on Mortgages (6th Ed.) vol. 1, § 971; and other cases cited in behalf of appellants.

We conclude that from the court's findings and undisputed facts that the judgment below, in so far as priority is therein given to the lien asserted by appellees herein, should be reversed and here rendered for appellants; the judgment in other respects being undisturbed, save that the sale of the lands involved in this suit and above described shall be subject to the prior lien of appellants as we have determined.