KONE et al. v. HARPER et al.   (No. 509.)*

Court of Civil Appeals of Texas.  Waco.
May 26, 1927.

Rehearing Denied June 30, 1927.

**1. Trial ⚎142—Uncontradicted evidence, reasonably warranting different deductions, presents fact questions.**

If evidence, though not conflicting, is such that court or jury may reasonably draw different deductions therefrom, questions of fact arise.

**2. Appeal and error ⚎842(1)—Subrogation of mortgage assignee to rights of holders of first liens, discharged from mortgage loan, held fact question for trial court.**

Whether assignee of mortgage was subrogated to rights of holders of first liens, discharged from proceeds of mortgage loan against holder of second lien, *held* a question of fact for trial court.

**3. Appeal and error ⚎1010(1)—Judgment supported by evidence, sufficient on any theory of case, must be affirmed.**

If evidence is sufficient to support judgment on any theory of case presenting fact question for trial court, it is appellate court's duty to affirm judgment.

**4. Subrogation ⚎23(4)—One advancing money to discharge incumbrance on realty, with understanding, that he is to have first lien, is subrogated to prior incumbrancer's rights, if new security is not first lien.**

One advancing money to pay off incumbrance on realty, at instance of owner of property or incumbrance, with understanding, express or implied, that advance is to be secured by first lien on land, is not a mere volunteer, and, if new security is not a first lien, holder, unless chargeable with culpable and inexcusable neglect, will be subrogated to rights of prior incumbrancer under latter's security, unless superior or equal equities of others would be prejudiced.

**5. Subrogation ⚎1—"Subrogation" is legal ⸱fiction, by which obligation, extinguished by third person, subsists for latter's benefit.**

"Subrogation" is a legal fiction, by which obligation, extinguished by payment made by a third person, is treated as still subsisting for latter's benefit, so as to substitute one creditor to rights, remedies, and securities of another.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Subrogation.]

**6. Subrogation ⚎31(5)—Payment of mortgage debt operates as discharge or assignment of mortgage, substituting person paying for mortgagee.**

As respects question whether ·payment operates as an equitable assignment, payment of money due on mortgage operates as discharge, or in nature of assignment, thereof, substituting one paying it in place of mortgagee as best serves purposes of justice and parties' just intent, whether or not he takes assignment or

release of mortgage, or discharge was made and evidence of debt canceled.

**7. Subrogation ⚎38—Mistake of fact does not interfere with equitable subrogation.**

A mistake of fact does not interfere with application of the rule of equitable subrogation.

**8. Subrogation ⚎17—Mortgagee paying first liens is subrogated to holders' rights against holder of second lien note, though ignorant of who held it.**

Mortgagee had right to pay off first liens on land and be subrogated to holders' rights as against holder of second lien prior to mortgage, whether it knew who held record lien note or not.

**9. Subrogation ⚎23(3)—Mortgagee paying first liens from mortgage loan at mortgagor's request was subrogated to rights of lien holders against second lienholder.**

Mortgagee, paying off first liens on land out of mortgage loan at mortgagor's request, was not a volunteer, and had right to be subrogated to rights of holders of such liens against holder of second lien.

**10. Subrogation ⚎17—Record release, instead of transfer of first lien notes to mortgagee paying them, did not affect latter's right to subrogation against second lienholder.**

That first lien notes were paid off by subsequent mortgagee and released of record, instead of being transferred to mortgagee, did not affect latter's right to be subrogated to holder's rights as against holder of second lien, latter being placed in no worse position.

**11. Subrogation ⚎34—Mortgage assignee succeeded to mortgagee's right of subrogation to rights of holders of first lien notes, paid by mortgagee.**

Assignee of mortgage, securing loan from proceeds of which mortgagee, at mortgagor's request, paid off first liens on land, succeeded to all of mortgagee's rights, including that of subrogation to rights of first lienholders against holder of second lien.

**12. Vendor and purchaser ⚎231(17)—Mortgage loan on land, subject to first lien, paid by mortgagee and released near time of closing loan, as shown by deed records, held sufficient to put subsequent purchaser of land on inquiry as to payment from loan.**

That mortgage loan was on same land, against which three notes were first lien, and latter were paid off by mortgagee, and released near time loan was closed, as shown by deed records, *held* sufficient to put subsequent purchaser of land on injury, which would have brought home actual knowledge that notes were paid from such loan.

**13. Vendor and purchaser ⚎244, 261(4)—Evidence held sufficient to charge holder of second lien note and purchaser of realty with notice that junior mortgagee paid first lien notes and took subordination agreement from former owner of second lien note by mistake, under circumstances entitling mortgagee to subrogation.**

Evidence *held* sufficient to charge holder of second lien note and purchaser of land after as-

⚎For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted November 2, 1927.

signment of junior mortgage thereon with notice that first lien notes were paid by mortgagee and released of record and subordination agreement take from former owner of second lien note by mistake, under circumstances entitling mortgagee to be subrogated to rights of holders of first lien notes against holder of second lien note.

**14. Limitation of actions ⑬⇒48(1)—Suit on mortgage notes for loan, from which mortgagee paid first lien notes barred by statute, held not barred.**

Suit on mortgage notes by assignee of mortgagee paying first lien notes, barred by statute of limitations from proceeds of mortgage loan, made to take up and extend existing liens, *held* not barred, question being, not whether right to subrogation arising as matter of law is barred, but whether debt, made basis thereof is barred.

**15. Mortgages ⑬⇒183—Grantor in deed reciting conveyance subject to first lien of mortgagee, paying first lien notes from mortgage loan, held not estopped to deny that entire loan was first lien.**

Grantor in deed reciting that conveyance was subject to first lien held by mortgagee paying first lien notes from proceeds of mortgage loan *held* not estopped to deny that entire loan was first lien; recitation being descriptive only and not misleading to injury of mortgagee's assignee suing on mortgage notes.

Barcus, J., dissenting.

Appeal from District Court, McLennan County; Giles P. Lester, Judge.

Action by H. D. Kone against Dave Harper and others. From the judgment rendered, all the parties appeal. Affirmed.

Williamson & McDonnell, of Waco, for appellants.

Trippett, Boggess & Sheehy, of Waco, and Ross, Ross & Alexander, of Fort Worth, for appellees.

STANFORD, J. On March 4, 1913, G. C. Smith and wife executed and delivered to Leslie Wagner, trustee for the Texas Farm Mortgage Company, a deed of trust on 1,609½ acres of land, to secure the payment of one note for $8,000, and on the same date the said Smith and wife executed a second deed of trust on the same land to said Texas Farm Mortgage Company to secure another note for $2,165. On March 28, 1913, the above $8,000 note was transferred by said Texas Farm Mortgage Company to the Travelers' Insurance Company. On November 1, 1916, E. A. Norman and wife executed a deed of trust on a 70-acre tract in favor of the Colonial & United States Mortgage Company, Limited, to secure one note for $800, which note was by said Colonial & United States Mortgage Company transferred to the Prudential Insurance Company. It was agreed in open court by all parties that the deeds

of trust above were given by the then owners of said tracts of land, and that the liens given were valid liens at the time given, and that G. C. Smith and E. A. Norman were both predecessors in title to J. C. Harper; and that J. C. Harper had a right to deed said property to Dave Harper. On June 1, 1921, J. C. Harper deeded the 1,609½-acre tract, the 70-acre tract, and an 18.8-acre tract to Dave Harper, and in said deed Dave Harper assumed the payment of the above-mentioned notes, and, as further consideration for said three tracts of land, Dave Harper executed, among other notes, a note for $7,200, secured by a vendor's lien on said above three tracts. On December 26, 1921, J. C. Harper transferred said $7,200 note to the Colonial Trust Company. On August 10, 1922, Dave Harper executed and delivered to the Ward-Harrison Mortgage Company a deed of trust covering the above three tracts of land, and also another tract of 1,022 acres to secure a loan of $25,000. At the time the Ward-Harrison Mortgage Company made its $25,000 loan to Dave Harper on the above-mentioned four tracts of land, to wit, 1,609½ acres, 70 acres, 18.8 acres, and 1,022 acres, there was a first lien note for $9,000 and another for $2,165 against said 1,609½-acre tract, and also an $800 first lien note against the 70-acre tract, and a $7,200 note, which was a second lien note, against said 1,609½-acre tract, the 70-acre tract, and a first lien against the 18.8-acre tract. The $25,000 loan procured by Dave Harper from Ward-Harrison Mortgage Company on all four of said tracts of land appears to have been procured for the purpose of taking up all these incumbrances on the various tracts of land, and in the consummation of said loan the first lien notes of $8,000, $800 and $2,165, with accrued interest on each, were paid off out of the proceeds of said loan. Also J. C. Harper, to whom the $7,200 note was originally payable, executed to said loan company a subordination agreement in the usual form, subordinating the lien, securing same to the lien securing the $25,000 loan made by Ward-Harrison Mortgage Company to Dave Harper. The fact that J. C. Harper had, prior to the date of said subordination agreement, transferred said $7,200 note to the Colonial Trust Company, seems to have been overlooked by said Ward-Harrison Mortgage Company by reason of the transfer not appearing in the abstract, and this mistake gave rise to this suit.

The Ward-Harrison Mortgage Company sold the $25,000 note, mortgage, and lien to the Kansas City Life Insurance Company. The Shear Company afterwards became the owner of all of said lands. The $7,200 note became due, and, to prevent foreclosure by the Colonial Trust Company, the owner of said note, Harold Shear, took up said note,

and had the same, with the lien securing same, transferred to himself for the use and benefit of the Shear Company; and H. D. Kone took the transfer of the note and lien from Harold Shear to himself, for the use and benefit of the Cantrell Investment Company, formerly the Shear Finance Corporation, the successor of the Shear Company, with the intention on the part of each to preserve the lien for the benefit of that company, etc.

Appellant H. D. Kone filed this suit on the $7,200 note against all the other parties, claiming that, when the Ward-Harrison Mortgage Company paid off out of the $25,-000 loan, the first lien notes for $8,000, $800 and $2,165, that then the $7,200 note became a first lien on the 1,609½-acre tract, the 70-acre tract, as well as the 18.8-acre tract. The Ward-Harrison Mortgage Company and the Kansas City Life Insurance Company contend that, by reason of the former company's paying off said first lien notes out of the proceeds of said $25,000 loan, it became subrogated to the rights of the holders of said first lien notes, and, to the extent of the amount so paid in discharging said first lien notes, its lien securing the $25,000 loan became a first lien, and, on said loan being transferred to the Kansas City Life Insurance Company, the latter company succeeded to all the rights of the former.

The case was tried before the court without a jury, and judgment rendered allowing the Kansas City Life Insurance Company to be subrogated to the rights of the original first lienholders, thereby constituting $9,015 of its $25,000 loan, a first and prior lien on the 1,609½ acres and the 70 acres to the lien securing said $7,200 note, but the lien securing the remainder of said loan was adjudged to be inferior to the lien securing said $7,200 note on said tracts of land. There are numerous parties to the suit and numerous issues involved. The pleadings seem to be sufficient to raise all the issues. The judgment is lengthy, and contains many provisions. All parties have appealed and assign error, but the principal question involved seems to be the question of subrogation as above indicated.

[1] Under the first, second, third, and fourth propositions appellants contend that, where one in making a new loan paid out of the proceeds of such loan, and had released of record, certain outstanding first liens against the properties upon which the new loan is made, the right of subrogation will not be allowed, unless there is an express or implied agreement for such, and that an implied agreement for subrogation will not arise where the parties asserting such right by implication knew that in paying off and having released of record the prior liens intervening liens would become first or superior liens; and the party making such loan, hav-

ing by his own acts knowingly caused the lien in question to become an apparent first lien, is estopped, when a third person purchases such lien believing it to be a first lien, from asserting the right of subrogation; and, should the original beneficiary of a lien and mortgage be entitled to subrogation on account of facts surrounding the making of such loan, the assignee of such party is not entitled to subrogation, in the absence of an express agreement therefor between the assignor and assignee. The record discloses without any controversy that there were two first lien notes against the 1,609½-acre tract of land, one for $8,000 and the other for $2,165. These liens were placed against said land March 4, 1913. There was also a first lien note for $800 against the 70-acre tract. This lien was placed against said 70 acres November 1, 1916. The $7,200 note was a second lien note against said 1,609½-acre tract and the 70-acre tract, and a first lien against an 18.8-acre tract. This lien was placed against said three tracts of land on June 1, 1921. All of the above liens were valid and subsisting liens against said tracts of land at the time Dave Harper made his application to the Ward-Harrison Mortgage Company for a loan on said property, the $8,000 note and the $2,165 note being a first lien on the 1,609½ acres and the $800 note being secured by a first lien on the 70 acres, and the $7,200 note by a second lien on said two tracts and a first lien on the 18.8 acres. In the application for said loan is the following question and answer: "What use is to be made of the money borrowed?" and the answer is: "To take up and extend present liens." On this application the $25,000 loan was made to Dave Harper by the Ward-Harrison Mortgage Company, and a deed of trust executed by Dave Harper in favor of the Ward-Harrison Mortgage Company upon all the property in controversy. This $25,-000 loan, with the lien securing same, was then, on October 6, 1922, transferred by the Ward-Harrison Mortgage Company to the Kansas City Life Insurance Company. At the time the $25,000 loan was made, and out of the proceeds of same, the $8,000 note, the $2,165 note, and the $800 note were paid, and the lien securing each released by the respective owners of said notes. Also J. C. Harper, to whom the $7,200 note was originally payable, executed a subrogation agreement reciting that he was the owner of said $7,200 note, and subordinating the lien securing same to the lien securing the $25,000 loan, but it appears J. C. Harper, sometime prior to the execution of said subordination agreement, had transferred the $7,200 note to the Colonial Trust Company as collateral, and that said trust company was then the holder of said note. There is practically no conflict in the evidence in this case, but it does not necessarily follow that there are no issues of

fact to be decided, for, if the evidence is such that the court or jury may reasonably draw different deductions therefrom, although there is no conflict in the evidence, then questions of fact arise.

[2-4] Clearly, we think, in this case, the evidence was such, bearing upon the right of appellee Kansas City Life Insurance Company to be subrogated to the rights of the holders of the prior liens discharged by the proceeds of said loan, as to make said question one of fact for the trial court, and, the trial court having rendered judgment allowing said appellee the right of such subrogation, if the evidence is sufficient to support such judgment upon any theory of the case, then it is our duty to affirm such judgment. In 27 Am. & Eng. Ency. of Law, p. 247, it is said:

"One who advances money to pay off an incumbrance on realty at the instance of either the owner of the property or the holder of the incumbrance, either on the express understanding or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the land, is not a mere volunteer, and in the event the new security is for any reason not a first lien on the property, the holder of such security, if not chargeable with culpable and inexcusable neglect, will be subrogated to the rights of the prior incumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby, and to this end equity will set aside a cancellation of such security and revive the same for his benefit."

[5, 6] The above is, we think, a correct statement of the rule of law that does and should govern the question of subrogation in this state, and is approved by the Fort Worth Court of Civil Appeals in Sanger Bros. v. Ely & Walker Dry Goods Co. et al., 207 S. W. 348, and writ of error refused by our Supreme Court. In the case of First National Bank v. Ackerman, 70 Tex. 320, 8 S. W. 47, our Supreme Court said:

"Subrogation * * * is said to be a legal fiction by force of which an obligation, extinguished by a payment made by a third person, is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another. The party who is subrogated is regarded as constituting one and the same person with the creditor whom he succeeds. These definitions have been generally adopted and followed by the courts. Sheld. sub. 2, 3. In accord with these liberal principles, the fairness and justness of which commend them to the enlightened sense of all correct thinking men, Judge Parker, in the case of Robinson v. Leavitt, 7 N. H. 100, 101, makes the following lucid exposition of the doctrine of equitable assignments and the right of subrogation: 'The true principle * * * is, that when money due on a mortgage is paid, it shall operate as a discharge of the mortgage, or in the nature of an assignment of it, substituting him who pays in the place of the mortgagee, as may best serve the purposes of justice, and the just intent of the parties. * * * And it makes no difference * * * whether the party, on the payment of the money, took an assignment of the mortgage or a release, or whether a discharge was made, and the evidence of the debt cancelled. * * * The debt itself may be held still to subsist in him who paid the money as assignee, so far as it ought to subsist in the nature of a lien on the land, and the mortgage be considered in force for his benefit, so far as he ought in justice to hold the land under it as if it had actually been assigned. * * * Justice has been effected between parties in this mode by overlooking the form of the transaction.' "

[7-10] The above principles of law governing the question of subrogation are sustained, not only by the decisions of the Supreme Court of this state, but by the great weight of authority in all jurisdictions. There is no question but that the $8,000 note, the $2,165 note, and the $800 note were all first lien notes on the land in controversy, while the $7,200 note was only a second lien note, except as to the 18.8 acres. There is no question but that Dave Harper procured the loan from Ward-Harrison Mortgage Company and said company made said loan to Dave Harper for the express purpose of taking up and extending present liens on said land. There is no question but that these first lien notes were paid off by the Ward-Harrison Mortgage Company out of the proceeds of the loan it made to Dave Harper. There can be no doubt but that both Dave Harper and the Ward-Harrison Mortgage Company intended said company should have a first lien to secure its mortgage being made to take up and extend existing liens on said lands, and said company would not have made said loan but for the fact it thought it was getting a first lien on all of said lands. The record shows the transfer of the $7,200 note from J. C. Harper, the original payee in said note, to the Colonial Trust Company was not properly indexed, by reason of which said transfer did not appear in the abstract of title to the lands in question, so said abstract showed J. C. Harper as the owner of said $7,200 note, and the Ward-Harrison Mortgage Company, before closing its loan, took the subordination agreement from J. C. Harper subordinating the lien securing the $7,200 note to its mortgage, when as a matter of fact J. C. Harper had previously transferred said note to the Colonial Trust Company, but neither the Ward-Harrison Mortgage Company nor any of its agents or attorneys had any actual knowledge of said transfer. On October 19, 1922, Dave Harper conveyed the land in controversy to the Shear Company, subject to the $25,000 loan made by Ward-Harrison Mortgage Company and the $7,200 note in controversy. The deed of trust executed by Dave Harper to the Ward-Harrison Mortgage Company to secure said $25,000 loan provides as follows:

"It is further agreed that, should the beneficiary, or any holder of said notes hereby secured, satisfy any charge on or against said property, * * * the amount so advanced or paid shall be payable by the undersigned forthwith, with interest at the rate of 10 per cent. per annum until paid, and the beneficiary, or any holder of said notes, shall be entitled to all the equities of the person to whom such payment shall have been made."

As stated above, it is clear that it was the intention of both Dave Harper, the mortgagor, and the Ward-Harrison Mortgage Company, the mortgagee, that said company should have a first lien to secure its $25,000 loan. It is also clear that the Ward-Harrison Mortgage Company thought it was getting a first lien on the property when it paid off the prior liens against same. The agents of said loan company and the attorney who examined the abstract testified that they had no knowledge that the Colonial Trust Company owned this note. The very fact that said loan company took said subordination agreement from J. C. Harper, when the Colonial Trust Company was the owner of said $7,200 note and lien securing same, is conclusive that said loan company did not have actual knowledge at said time that the Colonial Trust Company was the owner of said note, and, but for the mistake of fact as to the ownership of said $7,200 note, said loan company would have required said subordination agreement from the Colonial Trust Company, which would have resulted, in any event, in giving said loan company a first lien for the entire amount of its $25,000 loan, and a mistake of fact does not interfere with the application of the rule of equitable subrogation. See note, 99 Am. St. Rep. p. 517. But the liens paid off by the Ward-Harrison Mortgage Company were admittedly first liens, while the $7,200 note was only a second lien, and said mortgage company had the right to pay off said first liens and be subrogated to the rights of the holders of same whether it knew who held the record lien note or not. So the question of notice, we think, is unimportant as to the question here involved. The Ward-Harrison Mortgage Company, out of its $25,000 loan made to Dave Harper at his request to take up and extend existing liens, paid off the first liens. It was not a volunteer in so doing (Bank v. Ackerman, 70 Tex. 315, 8 S. W. 47; Whiteselle v. Loan Agency [Tex. Civ. App.] 27 S. W. 313; Sanger Bros. v. Ely & Walker [Tex. Civ. App.] 207 S. W. 348; American Bonding Co. v. Bank, 97 Md. 598, 55 A. 395, 99 Am. St. Rep. and note, pages 512 and 513; 27 Am. & Eng. Ency. of Law, p. 247); and, having paid said first liens, said mortgage company had the right to be subrogated to the rights of the holders of said first liens, and, equity and justice requiring that it be so subrogated and the Colonial Trust Company, the holder of the $7,200 second lien note, not being

placed in any worse position by allowing such subrogation, it is wholly immaterial that said first lien notes were paid off and released of record instead of being transferred to said mortgage company, for as said by our Supreme Court in the case of Bank v. Ackerman, supra:

"The debt itself may be held still to subsist in him who paid the money as assignee, so far as it ought to subsist in the nature of a lien on the land, and the mortgage be considered in force for his benefit, so far as he ought in justice to hold the land under it as if it had actually been assigned." Hicks v. Morris, 57 Tex. 658; Dillon v. Kauffman et al., 58 Tex. 696; Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 13 S. W. 13; First Nat. Bank v. Ackerman, supra; Whiteselle v. Texas Loan Agency (Tex. Civ. App.) 27 S. W. 309; Sanger Bros. v. Ely & Walker (Tex. Civ. App.) 207 S. W. 348; 25 R. C. L. p. 1343, § 26; note, 99 Am. St. Rep. page 512.

[11] Under the rule of law above by our Supreme Court, we think the Ward-Harrison Mortgage Company was entitled to be subrogated to the extent of the amount of its loan used in paying off said first liens, and that this right resulted both by implication and by the express provision of the deed of trust above set out; and that, by the assignment of said $25,000 loan and all liens securing same by the Ward-Harrison Mortgage Company to the Kansas City Life Insurance Company, said last named company succeeded to all the rights of its assignor, including the right of subrogation.

[12] The record discloses the deed of trust given by Harper to Ward-Harrison Mortgage Company was dated August 10, 1922, and acknowledged and filed for record August 14, 1922. The subordination agreement was dated and acknowledged August 18, 1922, and filed for record September 30, 1922. The release of the three first lien notes for $800, $8,000 and $2,165 were all filed for record September 30, 1922, the same date the subordination agreement was filed from J. C. Harper subordinating the $7,200 note to the $25,000 Ward-Harrison mortgage. The fact that the $25,000 loan was on the same land against which said three notes aggregating approximately $10,000 was a first lien, together with the fact said first lien notes were paid off and released near the time said loan was closed, all of which was shown by the deed records, was sufficient, we think, to put the Shear Company upon inquiry, which, if pursued, would have brought home to said company actual knowledge that said first lien notes were paid out of said loan. Of course, the loan company would not have made a $25,000 loan against land with $10,000 prior liens against it, and, if Dave Harper had had $10,000 with which to pay off the first lien notes, he certainly would not have borrowed $25,000 on the same land.

[13] Again, Mr. Siddons, president of the

Colonial Trust Company, testified that he sent the Shear Company the abstract prior to the time they paid the $7,200 note. This corrected abstract showed the transfer of the $7,200 note from J. C. Harper to said Colonial Trust Company, and also showed that, some six months or more after said transfer, J. C. Harper, about the time the $25,000 loan was closed, executed to the Ward-Harrison Mortgage Company the agreement purporting to subordinate the $7,200 second lien note to the $25,000 loan. This was notice to the Shear Company that the Ward-Harrison Mortgage Company intended to and thought they were getting a first lien on said land, and, but for the mistake of fact in taking said agreement from the wrong party, their entire loan of $25,000 would have been prior to the $7,200 note. The record discloses further that Mr. Siddons knew about these three first lien notes, and knew that his note for $7,200 was only a second lien, and he also knew that in "rearranging" the loans these first lien notes had been paid off, and expressed surprise that his $7,200 had not been taken care of. He also had two conversations with Mr. Orand, an officer of the Shear Company, in regard to the question of the kind of lien he felt he had, and said Shear Company was aware of the way he felt about it; that he considered he had a first lien based upon his investigation of the records, etc.; and that Mr. Orand told him that, if they bought the land, they would pay off the $7,200 note. The Shear Company did buy all the land covered by the $25,000 loan as well as the $7,200 note, subject to said incumbrance, and for more than a year was familiar with the title, the loans on same, and how said loans were arranged and rearranged. On the trial, of course, the Shear Company contended the $7,200 was a first lien, but this contention was based primarily and principally upon the mere fact that the first lien notes were paid off and released of record in rearranging the loan, instead of being transferred to the Ward-Harrison Mortgage Company. We have not attempted to state all the evidence bearing upon the question here involved, but we are satisfied from all the facts and circumstances involved that the finding of the trial court to the effect that the Shear Company was chargeable with notice, at the time Harold Shear purchased said $7,200 note for its benefit, of the manner, circumstances, and by whom said first lien notes, were paid, is sufficiently supported by the evidence. The trial court evidently found, and the evidence is sufficient to support such finding, that the Colonial Trust Company, the holder of the $7,200 second lien note, and the Shear Company, for whom Harold Shear purchased said note, knew that the first lien notes had been paid off out of the $25,000 loan made by the Ward-Harrison Mortgage Company, and

was sufficient to charge both with notice that said first lien notes were paid and released and the subordination agreement taken from J. C. Harper, instead of the Colonial Trust Company, by mistake. In other words, the record is sufficient to charge both with notice that said first lien notes were canceled of record, and the second lien note thereby apparently became a first lien note by a mistake of fact, and under such circumstances as to entitle the Ward-Harrison Mortgage Company to be subrogated to the rights of the holders of said first lien notes. Hence said parties were not innocent purchasers, nor misled to their injury, nor the Kansas City Life Insurance Company estopped to assert its right of subrogation. Granting this right of subrogation does not injure the holder of the second lien note, nor place him in any worse position—he still holds said second lien—but only prevents the holder thereof from reaping a benefit by having his lien advanced from a second to a first lien by reason of a mistake of fact on the part of said mortgage company. We think, clearly, the judgment of the trial court in allowing the Kansas City Life Insurance Company to be subrogated to the rights of the first lienholders for the amount of said $25,000 loan used in paying off these first liens is sustained by the evidence. These assignments are overruled.

[14] Under appellant's fifth and sixth points the contention is made that the right to subrogation asserted was barred by the statutes of limitation of two and four years. If at the time the Ward-Harrison Mortgage Company paid off said first lien notes it had had same transferred to itself, and held same as the evidence of its indebtedness against Dave Harper, and had sold and transferred said original notes to the Kansas City Life Insurance Company, and it had so held same without any renewal, and said last named company had sued upon said original notes, said plea of limitation of four years would be good, not against the right of subrogation, but against the debt evidenced by said original notes. But, if, in such case, while owned by either of said companies, said notes and lien had been extended by such company owning same, and Dave Harper, who assumed to pay same, of course limitation would run from the extended maturity date. This, in effect, was what was done in this case. The Ward-Harrison Mortgage Company, at the request of Dave Harper, made him a new loan of $25,000 to take up and extend existing liens on said land, and a part of the proceeds of said loan was used to pay off said first lien notes, and the amount so used, and for which amount the Kansas City Life Insurance Company was subrogated to the rights of the holders of said first lien notes, was included in the new loan for $25,000 evidenced by three notes, on which the

Kansas City Life Insurance Company's suit is based, and none of said notes are barred. The question is, not whether the right to subrogation is barred, for such right arises, if at all, as a matter of law, but the question should be, Is the debt made the basis of such right barred? There is no merit in these assignments, and they are overruled.

We have considered all of the assignments of error of appellant H. D. Kone, the holder of the $7,200 note, and also all of the cross-assignments of appellants H. D. Kone and the Cantrell Investment Company, the present owner of the land, to the action of the court in appointing a receiver, and, finding no reversible error in any of said assignments or cross-assignments, the same are hereby overruled.

We will next consider briefly the cross-assignments of error by appellee Kansas City Life Insurance Company. Under its first two assignments said appellee contends, in effect, that the court erred in refusing to award it a first lien on said lands to secure the entire amount of its $25,000 loan, because the Shear Company, while it owned the land in question, had assumed the payment of the $7,200 note, and therefore, when it paid same, could not have said note transferred to Harold Shear for its benefit and thereby keep said lien alive. We have carefully examined the evidence, and, without undertaking to set same out, will say the evidence fails to show that the Shear Company assumed said note or in any way became obligated to pay same; hence appellee's proposition of law has no application. These assignments are overruled.

[15] Under other assignments, said appellee contends the court erred in not decreeing it a first lien for the entire amount of its $25,000 loan, because in the deed of the Shear Company to the Shear Finance Corporation, conveying the land in question, said deed recited said conveyance was "subject to an indebtedness of $25,000 first lien held by Ward-Harrison Mortgage Company," and so the Shear Company was estopped to deny that appellee's entire loan was a first lien. The recitation in reference to this loan was doubtless only descriptive, and in no way undertook to change the status of the lien securing same, which had already been fixed. Neither was said appellee in any way misled to its injury by such recitation. Hence no estoppel could thereby arise in appellee's favor. These assignments are overruled.

We have considered all of appellee's said cross-assignments, and, finding no error, overrule same, and affirm the judgment of the trial court.

BARCUS, J. I regret that I am unable to agree with my brethren in the disposition of this cause. I cannot agree with the finding of fact to the effect that Harold Shear or the Shear Company or the present holder of the $7,200 note knew that the first lien notes had been paid out of the $25,000 loan made by the Ward-Harrison Mortgage Company, or that the evidence is sufficient to charge them with notice of said fact, or sufficient to charge either of said parties with notice that the lien notes paid were canceled by a mistake; nor can I agree to the finding that the $25,000 was loaned by the Ward-Harrison Mortgage Company on the land which secures the $7,200 note. The record shows without dispute that the Ward-Harrison Company paid off out of the $25,000 loan about $10,000 against the 1,698 acres of land which secures the $7,200 note in question, and about $14,000 against another 1,000-acre tract, and took its mortgage against the whole 2,720 acres. I have carefully studied the statement of facts, and do not find any evidence that to my mind tends to show that Harold Shear or the Shear Company knew when it purchased the $7,200 note that the $25,000 loan by the Ward-Harrison Mortgage Company was used to pay off any liens of any kind, class, or character against any of the property involved in the litigation. It appears to me from the record that the evidence shows without dispute that neither Harold Shear nor the Shear Company nor the present owner and holder of the $7,200 note had any knowledge of any fact, nor were they charged with notice of any fact that would put them on inquiry that any of the funds from the Ward-Harrison loan were used to pay off any prior liens. The only evidence in the record that I have discovered bearing on this question is the deed of trust given by Harper to the Ward-Harrison Mortgage Company, dated August 10, 1922, and it does not in any way refer to or suggest that any of the loan was to be, or was, used to pay any prior indebtedness. The releases of the indebtedness that were on the land at the time the loan was negotiated recited that the notes were paid by other and different parties. The $8,000 note release recites that it was paid by Smith, the original signer thereof, and there is nothing in the release of the $800 note that indicates who paid same. The agent for the loan company who handled the making of the original $25,000 loan testified that it was the custom of the loan company to keep liens which the company paid out of its loans alive, but that in this particular case they did not intend to keep the liens alive, but had same released. Thereafter the Ward-Harrison Mortgage Company, on October 6, 1922, transferred without recourse the $25,000 mortgage note to the Kansas City Life Insurance Company, the present owner thereof. Harper, who held the $7,200 note, transferred same in December, 1921, to the Colonial Trust Company, and the transfer was placed of record March 31, 1922. The loan

was made by the Ward-Harrison Mortgage Company to Harper on August 10, 1922, some five months thereafter. On August 18, 1922, eight days after the deed of trust was given by Harper to the Ward-Harrison Mortgage Company, Harper executed to the Ward-Harrison Company a subrogation agreement, under the terms of which he made the $7,200 note an inferior lien to the $25,000 note. At that time, however, the record shows without dispute that Harper did not own the $7,-200 note, but that he had several months prior thereto transferred same to the Colonial Trust Company. The officers of the Colonial Trust Company as well as the officers of the Shear Company testified that, at the time the note was transferred by the Colonial Trust Company to the Shear Company, they all thought that the $7,200 note was a first and prior lien against the 1,698 acres. The application which Harper made to Ward-Harrison Mortgage Company for the loan recited that the $7,200 note was against said tract, and that he expected to use part of the funds to pay same. The contents of this application, however, were not known in any way to the Colonial Trust Company or the Shear Company. The only circumstance in the record that was in any way irregular, and that could have aroused the suspicion of the Shear Company at the time it purchased the note from the Colonial Trust Company, was that Harper, on August 18th, ten days after he had executed the mortgage to the Ward-Harrison Mortgage Company, gave a subrogation agreement, agreeing that the $7,200 note should be an inferior lien to the $25,000 lien held by the mortgage company. The record, however, as above stated, showed that at that time Harper did not own the $7,200 note, and had not owned it for more than eight months.

In my opinion, under the facts in this case, the Shear Company purchased the $7,-200 note without any notice that it was not a first lien on the 1,698 acres of land. The Ward-Harrison Mortgage Company loaned its $25,000 on 2,720 acres, which embraced the 1,698 acres, and used the larger portion thereof to pay liens against various portions of the 2,720 acres, and, as shown by its own testimony, had not attempted to keep the liens alive, but had deliberately had them, and each of them, released of record, and thereby made it appear from the record that the $7,200 note was a first lien on the 1,698 acres of land as against their $25,000 lien. In my opinion, the Shear Company and the present owner and holder of the $7,200 note were innocent purchasers for value without any notice of any equitable lien held by the Ward-Harrison Mortgage Company or its assigns. Where a party holds a mortgage on property, and causes same to be released, and thereafter a mortgage which was a junior mortgage to the one released is sold for value, the purchaser of the junior mortgage has a right to rely on the record which shows that the prior mortgage had been released, and, as against the parties who have caused the prior mortgage to be released, is entitled to be protected in his rights. The axiom that "he who causes the injury should be the first to suffer" should, I think, be applied in this case. The Ward-Harrison Mortgage Company having caused the prior liens to be released, and the Shear Company and the present holder, having purchased the $7,200 note, relying on the prior notes being paid, are entitled to have said note foreclosed as a first lien on the 1,698 acres, and, in my opinion, the trial court should have so decreed. Coonrod v. Kelly (C. C. A.) 119 F. 841; Washington Co. v. Slaughter, 54 Iowa, 265, 6 N. W. 291; Amick v. Woodworth, 58 Ohio St. 86, 50 N. E. 437; 41 C. J. 583.