Ralph S. MAREK et al., Appellants,

v.

Joseph Thomas CHILDERS et ux., Appellees.

No. 16015.

Court of Civil Appeals of Texas.

Fort Worth.

June 12, 1959.

Rehearing Denied July 10, 1959.

Buck C. Miller, Houston, for appellants.

DeLange, Hudspeth & Pitman, Houston, for appellees.

MASSEY, Chief Justice.

The appeal is from a judgment relating to rights under a claimed subrogated lien upon realty decreed in favor of one creditor against another who had theretofore foreclosed a lien upon the same property and purchased the same at a trustee's sale. The judgment decreed subrogation in favor of the plaintiffs and ordered foreclosure thereof on property the defendant had purchased at such trustee's sale.

The judgment is reversed and the cause remanded for another trial.

Joseph Thomas Childers and his wife were the plaintiffs below. They will hereinafter be denominated plaintiffs in our discussion. Ralph S. Marek and his brothers were in the sheetrock installation business under the name of Marek Brothers Sheetrock Installation Company. They, and other parties not necessary to mention further, were defendants. They will hereinafter be referred to as Marek Brothers. Preston B. Dumas was a defendant in the plaintiffs' suit and a defendant in cross-action to the counter suit of Marek Brothers. He will hereinafter be referred to as Dumas.

In 1955 Dumas owned eleven lots or parcels of real estate in Memorial Terrace, an addition in Harris County, Texas. He was in debt at the time to Frank Lancaster. The debt had been reduced to the figure of $13,135.86. It was evidenced by a note in the amount of $30,000, minus credits thereon. Security therefor was by way of deed of trust upon all of the aforementioned lots and perhaps by vendor's lien thereon retained in the original warranty deed. Security was collaterally assigned by Lancaster to the Second National Bank of Houston.

On December 12, 1955, Dumas either owed or obligated himself to pay Marek Brothers the sum of $4,467.22. He executed a note on that date for said amount, and as security therefor executed a deed of trust upon two of the lots described in

the deed of trust theretofore executed as security of Lancaster's debt. This deed of trust was filed of record on date of December 14, 1955, two days after it was executed.

On December 15, 1955, Dumas borrowed $25,000 from the plaintiffs. He executed a note for $27,000. As security he executed a deed of trust upon the eleven lots or parcels of real estate aforementioned. Two of these eleven lots were those as to which he had executed a deed of trust in security for the debt owed Marek Brothers three days earlier. In the closing of the transaction pursuant to the loan of money by the plaintiffs to Dumas one or both of the parties used the services of Jack Schultze, an employee of Stewart Title Company. The record does not disclose whether Schultze ever talked with the plaintiffs, but he did talk with Dumas. The plaintiffs' $25,000 was delivered to Schultze, and he, with agreement of Dumas, paid $13,135.86 to the Second National Bank of Houston and delinquent taxes upon the aforementioned eleven lots in the sum of $73.10, a total amount of $13,208.96. The taxes were paid at Dumas' direction. The deed of trust was filed for record on December 19, 1955, and recorded on January 11, 1956.

On December 15, 1955, the Second National Bank executed a release of all the liens (covering all eleven lots) collaterally assigned to it by Frank Lancaster. The release was filed of record on December 23, 1955. On June 7, 1957, Lancaster executed a release of the same liens in order to eliminate any question concerning the authority of the bank to have executed the release of December 23, 1955. Lancaster's release was filed of record on June 19, 1957.

On February 5, 1957, there was a sale of the two lots under authority of the deed of trust executed by Dumas in security of the debt evidenced by the note to Marek Brothers. Marek Brothers was the purchaser of these two lots at this sale. These two

lots are the subject of the controversy between plaintiffs and Marek Brothers.

We might advantageously here mention that the plaintiffs agree that Marek Brothers did become the owners of the two lots in question by virtue of their purchase at this trustee's sale. Any question of their title to the property is thus removed. What has not been resolved, however, is whether said property is or may be decreed to be encumbered by a lien in security of indebtedness owing to the plaintiffs.

On March 5, 1957, there was a sale under authority of the other deed of trust of nine of the eleven lots described in and covered by the deed of trust executed as security for Dumas' indebtedness to the plaintiffs. The lots not sold at the sale were some as to which the lien had been previously released in accordance with the deed of trust terms, with credit of an amount in money given upon the original debt. As of the date of this sale the indebtedness owing plaintiffs had been reduced by about $10,000, with the balance owing still substantially in excess of the amount of $13,208.96 disbursed to the Second National Bank of Houston and to the various tax collection authorities, as heretofore noted, upon the "loan closing" procedure handled by Mr. Schultze.

In the trustee's sale of the nine lots on March 5, 1957, the two lots in question were lumped together along with the other seven, and a lump sum figure was bid for all nine lots by the plaintiffs, as purchasers. Pursuant thereto the sale of said lots, as a unit, was closed by the trustee conducting the sale and by one deed for the single consideration of $21,442.63 all nine lots were conveyed to the plaintiffs.

There is nothing in the record upon the matter of whether the plaintiffs knew of the claim of the Marek Brothers at the time of the sale on March 5, 1957, or upon the matter of whether the Marek Brothers knew of the plaintiffs' claim at the time of the sale on February 5, 1957. We may therefore assume that neither of said parties had actual notice of the other's sale.

There is no question but that plaintiffs obtained a good title to all the lots purchased at the trustee's sale of March 5, 1957, save and except the two lots the Marek Brothers purchased at the trustee's sale of February 5, 1957. Since on the face of the records in the office of the County Clerk the lien of the Marek Brothers attached upon the two lots at a time when there was no other record lien, the question to be resolved is whether plaintiffs can superimpose the bank's lien thereupon by subrogation.

We are of the opinion that a fact issue existed which should have been resolved in the trial court. That issue, as above noted, was whether as between plaintiffs and Dumas there was an agreement, understanding or intention that at the time the lien of the Second National Bank of Houston was paid off and released the plaintiffs were to be subrogated to said lien. The trial court was of the contrary opinion and to the effect that plaintiffs were subrogated to said lien as a matter of law. Our own conclusion is from the recitation of facts in evidence in the preceding part of this opinion, and we do not believe that the plaintiffs' burden of proof upon the matter was discharged to the extent that no fact issue remained. From such evidence the jury would have had to draw inferences in the resolution of the question. Had the question been submitted the jury would have been entitled to refuse to find that there was such an agreement, understanding or intention on the part of the parties at the time the $27,000 note and deed of trust were executed. Kone v. Harper, Tex. Civ.App. Waco, 1927, 297 S.W. 294, affirmed at Ward Harrison Co. v. Kone, Tex.Com.App., 1 S.W.2d 857; Platte v. Securities Inv. Co., Tex.Civ.App. Beaumont, 1930, 34 S.W.2d 295, affirmed at Tex. Com.App., 55 S.W.2d 551.

Even though we have arrived at the foregoing conclusion, and as result thereof will be obliged to remand the cause for another trial, it is apparent to us that it would be highly probable that the fact finder upon such further trial will find that it

was intended that the plaintiffs were to be subrogated to the lien of the bank. In the event of that likely result, the trial court will be in a position no different from that existent when he reached the same conclusion as a matter of law upon the trial from which this appeal was taken. The same question will then arise as has arisen before, to-wit: What form of judgment should be rendered?

Under a finding which would establish their right of subrogation, plaintiffs would be in the position of urging the trial court to grant them equitable relief in superimposing their subrogated lien upon the Marek Brothers' title to the two lots. There will be no question but what plaintiffs will be obliged to accompany their request for equitable relief with an offer on their part to do equity. The question would be: What equity, if any, would be plaintiffs' obligation?

Were we to visualize the situation as it existed immediately before the plaintiffs caused the nine various lots or parcels of property (including the two lots claimed by the Marek Brothers) to be sold at trustee's sale, it would appear that equity would demand that pursuant to any sale the plaintiffs should cause the same to be made in at least two parcels, one parcel consisting of the two lots claimed by the Marek Brothers, the other consisting of the remainder of the land secured by plaintiffs' lien. Plaintiffs' lien existed as to the two lots by reason of subrogation, but existed as to all the balance of the property both with and without respect to subrogation. Of course, the lien existent by reason of subrogation extended to all the property to the extent necessary to satisfy the debt thereby secured, but upon satisfaction of the amount so secured the plaintiffs would still have their single deed of trust lien under authority of which they could demand further satisfaction.

As between themselves and the Marek Brothers (considered as a creditor, or as the successor to the rights of a creditor) the plaintiffs would be obliged, if possible, to proceed under the principles of the doctrine of "marshaling of securities" and to take satisfaction of their subrogated lien out of property other than the two lots claimed by Marek Brothers to the extent that such satisfaction would be possible of attainment, and if full satisfaction not thereby obtained restricted in taking satisfaction of the balance from the two lots to the extent necessary to satisfy the remainder of the amount owing and secured under subrogation. See Pomeroy's Equity Jurisprudence (5th Ed.), Vol. 2, p. 86 et seq., "He Who Seeks Equity Must do Equity," sec. 396, "— Of Marshaling," Vol. 4, p. 1061 et seq., "Enforcement of Lien or Charge," sec. 1414, "Marshaling of Securities." See also 28 Tex.Jur., p. 751 et seq., all sections "Marshaling Assets"; 34 Texas Law Review, p. 1054 et seq., "Marshaling Assets in Texas (John F. Green, Jr.)", particularly p. 1057, sec. III, "The Rule of Inverse Order of Alienation" and p. 1061, sec. IV, "The Effect of a Release of One Parcel by the Senior Lienholder." As applied to this case, it is to be remembered that plaintiffs were seeking equitable relief and should be offering to "do equity," and therefore we do not believe that the Marek Brothers were obliged to specifically plead, or otherwise be deemed to have waived their rights, in respect to "marshaling." The rule would be different if plaintiffs were not bound by equitable principles as the applicants for relief.

It would appear that the Marek Brothers should have notice of any sale and be entitled to be present. Even were we to consider that the sale on March 5, 1957 had any validity as applied to the two lots, the value of these lots and of the other seven lots could not be arrived at through any percentage calculation based upon the sale price in view of the lack of any evidence bearing thereupon in the record before us. Harrison v. First Nat. Bank, Tex.Civ.App. Fort Worth, 1920, 224 S.W. 269, affirmed Tex.Com.App., 238 S.W. 209, opinion adopted.

Fortunately in this case the plaintiffs purchased all the lots at the trustee's sale, and it may be that they can restore themselves to position visualized and hypothesized above. In other words, it may be that at the next trial the plaintiffs will be in a position to tender equity that the trial court might see that the equitable relief for which they pray may be decreed in their behalf. If they cannot present themselves to the court tendering and offering to do equity and in a position to deliver upon such tender and offer the greater fault and responsibility therefor would probably be their own, as between themselves and the Marek Brothers, foreclosing the grant of this character of relief to them. We do not here attempt to launch upon speculative consideration of the situation which would obtain if upon the next trial the plaintiffs cannot offer to do equity as above discussed but offer to do equity in some other way, manner or fashion, for it is certain that the efficacy thereof would pose problems beyond the scope of the discussion we have deemed warranted by the nature of the questions before us on the present appeal.

The judgment is reversed and the cause remanded for another trial.