**HAYS et al. v. SPANGENBERG.**

No. 8226.

Court of Civil Appeals of Texas. Austin.

April 29, 1936.

Appellant's Motion Overruled May 27, 1936.

Appellee's Motion Overruled May 27, 1936.

Woodruff & Holloway, of Brownwood, for appellants.

McCartney & McCartney, of Brownwood, for appellee.

BAUGH, Justice.

Appeal is from a judgment in favor of appellee against A. M. Hays upon a promissory note executed by him and his wife, Mollie R. Hays, dated March 12, 1924, due November 1, 1928; and for foreclosure of a deed of trust lien on lands in Brown county, being the separate estate of Mollie R. Hays, given to secure said note. The foreclosure, however, was only as to a part of said judgment.

The following facts appear: On May 7, 1917, Hays and wife executed a note to R. L. Slaughter for $2,400, due December 1, 1922, bearing 8% interest, and secured by a deed of trust lien on said lands. The validity of that transaction is not questioned. In March, 1924, this note was past due and suit and foreclosure were threatened. The amount then due thereon was $2,872.22. A. M. Hays procured from J. W. Spangenberg, of Galveston, Texas, through the latter's attorney, a loan of $4,000, and on March 12, 1924, he and his wife executed a note for that amount and a deed of trust on said lands to secure its payment. Out of this money the R. L.

Slaughter note was paid and the lien securing same was released by him. Slaughter and Spangenberg had no dealings with each other; Slaughter released his lien outright, and Spangenberg had no agreement with Slaughter as to subrogation to the latter's security. What was done with remainder of the $4,000 Spangenberg loan, in excess of the amount of Slaughter's note, is not shown. Prior to March 15, 1927, Spangenberg had filed suit against Hays and wife on the $4,000 note and for foreclosure of the deed of trust lien. On that date, however, A. M. Hays paid to Spangenberg, from funds derived from an oil lease on said lands and sale of a part of the royalty, the sum of $2,100, $2,000 of which was applied on the note as follows: $1,106 on the principal, and the balance as interest up to November 1, 1926. The other $100 was paid as attorney's fees. That suit was thereupon dismissed. Upon further default in the payment of the balance on said $4,000 note, this suit was filed on August 17, 1932.

In defense to this suit, Mollie R. Hays, through her attorney and guardian ad litem appointed by the court, pleaded that she had been insane since 1922; that the deed of trust of March 12, 1924, was void for that reason and for the further reason that it was not acknowledged by her; that appellee was not subrogated to the rights of Slaughter, or, if so, limitation had run against him; or, if subrogated to Slaughter's rights and limitation had not run, he was entitled to recover only the $2,872.22 paid to discharge Slaughter's note, less a credit of the $2,100, and 6 per cent. interest thereon, and for foreclosure on Mrs. Hays' land to that extent only.

Trial was to a jury which found that Mollie R. Hays was insane when she executed said note and deed of trust in 1924, and when the settlement was made and the suit dismissed in 1927; and that she did not appear before the notary to acknowledge the deed of trust of 1924, as recited in the notary's certificate. The trial court thereupon rendered judgment against A. M. Hays for the unpaid balance of said note sued upon; held that Spangenberg was subrogated to the rights of Slaughter to the extent of the $2,872.22 paid to him, and decreed a foreclosure of a lien on said land for that sum, together with interest at the rate of 8 per cent. on the entire $4,000 up to November 1, 1926, less the $2,100 paid,

and interest at the rate of 6 per cent. on such indebtedness after November 1, 1926. The amount of the judgment, under this method of computation, for which foreclosure on Mrs. Hays' land was ordered, was $2,357.67. The attorney and guardian ad litem was allowed a fee of $250, which was taxed as costs. No personal judgment was rendered against Mrs. Hays.

Appellants' contentions may be summarized as follows: (1) That Spangenberg was not subrogated to the rights and lien of Slaughter whose note the money was lent to pay; (2) that if so, his cause of action was barred by limitation; and (3) that in any event Mollie R. Hays was entitled to have the $2,100 paid from her separate property fully applied to the extinguishment of the lien on her property to a greater extent than the trial court allowed, and to have the foreclosure limited only to the balance of the $2,872.22 due after proper credits had been allowed.

■ Under the jury findings, the note and deed of trust of March 12, 1924, were wholly unenforceable against Mrs. Hays as independent contracts. Not only was the deed of trust not acknowledged by her as required by law, but she was then insane and incapable of contracting with reference to her separate property. If any liability existed, therefore, against her separate estate, it arose by virtue of subrogation of Spangenberg to Slaughter's lien on said land to secure the latter's debt which had been paid by money furnished by him at the request of A. M. Hays for that purpose and to prevent a foreclosure by Slaughter of his lien.

■ The rule is now settled in this state that a volunteer who pays the debt of another without any legal or moral obligation on his part to do so, and who takes no assignment from the creditor, is not subrogated to the rights of such creditor. 39 Tex.Jur. § 27, p. 785, and cases cited. But one who pays the debt of another at the debtor's request, and the debtor's liability on such original debt is thereby discharged, is not a mere volunteer, and is entitled to be subrogated to the lien of such creditor. Harrison v. First Nat. Bank (Tex.Com.App.) 238 S.W. 209; San Antonio Cattle Loan Co. v. Blalack & Son (Tex.Civ.App.) 256 S.W. 974; Banks v. Cartwright (Tex.Civ.App.) 26 S.W.(2d) 708; Ward-Harrison Co. v. Kone (Tex. Com.App.) 1 S.W.(2d) 857; Annotations in 70 A.L.R. 1396 et seq.; 39 Tex.Jur. § 30, p. 789.

Appellants contend, however, that not only was the deed of trust of 1924, because not acknowledged by Mrs. Hays, absolutely void, for all purposes, but that had she been sane and acknowledged such deed of trust, it would not, because of her coverture, have been binding upon her. The question of a binding personal obligation against Mrs. Hays is not here involved. No personal judgment was rendered against her. In so far as the deed of trust of March 12, 1924, as a binding contract in and of itself, and as an enforceable instrument against her, is concerned, under the settled authorities it was void even against innocent purchasers. Wheelock v. Cavitt, 91 Tex. 679, 45 S.W. 796, 66 Am.St.Rep. 920; Buvens v. Brown, 118 Tex. 551, 18 S.W.(2d) 1057; Blankenship v. Lusk (Tex.Civ.App.) 77 S.W.(2d) 341.

■ The controlling issue here presented, however, is not the validity in and of itself of the transaction of March 12, 1924, but whether, under the facts and circumstances, equity will afford relief to one who innocently furnishes money to protect the property of another, incompetent to contract, without any notice of such disability, and which money was essential to the preservation of the incompetent's estate. No intervening equities, nor other lienors whose rights might be jeopardized, are involved. That the preservation of the incompetent's estate by the Spangenberg loan was beneficial to such estate affirmatively appears. But for such loan the estate would have been lost. Its preservation enabled the owner, as shown by the record, to realize in 1927 the sum of $5,000 through an oil lease and the sale of a part of her royalty. To avoid the transaction of 1924 for all purposes would amount to sanctioning, because of Mrs. Hays' incompetency to contract, a fraud upon her benefactor, and work a gross injustice upon an innocent lender of money for her benefit. The facts here presented afford cogent reasons for the application of the doctrines of equity, and salutary grounds to sustain subrogation. It is not necessary to discuss the different kinds of subrogation. It is essentially a creature of equity, and its application provoked to prevent fraud or injustice. Platte v. Securities Inv. Co. (Tex.Com.App.) 55 S.W. (2d) 551, 553; 39 Tex.Jur. 758.

▇▇ As applied to the contracts of insane persons, whose estates have benefited therefrom, we have found no Texas case directly in point. It is now settled in this state that the contract of an insane person, who has not been so adjudged, and where the other contracting party has no knowledge of such ·disability, is not void but merely voidable. Williams v. Sapieha, 94 Tex. 430, 61 S.W. 115; Westbrook v. Adams (Tex.Civ.App.) 17 S.W. (2d) 116; 24 Tex.Jur. 380. And where such contract has been executed, and an innocent party has paid out his money under it, such insane person, in order to avoid such contract, should restore the consideration where it has been used for necessaries, or is still in the hands of the party seeking relief. See Williams v. Sapieha, supra; 24 Tex.Jur. 384, and cases there cited. While in the instant case neither Mrs. Hays nor her husband had in their possession the funds furnished by Spangenberg to pay off Slaughter's note, her estate had received the full benefit of such payment and had been saved to her. The result, we think, is the same.

▇ While no personal liability against Mrs. Hays was created by such note and purported deed of trust, in view of the cases above cited, we think that her signature with her husband on the note to Spangenberg, whereby the money to pay the Slaughter note was obtained, should have, the effect of extending to the due date of the Spangenberg note the amount of the Slaughter indebtedness so paid. No fraud nor imposition was practiced upon Mrs. Hays. Her husband had from pride not made known her condition to Spangenberg nor to his agent. Obviously, he was endeavoring to, and did, protect her interest. Under these circumstances, as was held by the Supreme Court of Indiana in Spaulding v. Harvey, 129 Ind. 106, 28 N.E. 323, 324, 13 L.R.A. 619, 28 Am.St.Rep. 176, "The fact that the mortgage proved to be void because the makers had not the legal power to make it affords only stronger reasons why the equitable doctrine of subrogation should be invoked." In that case subrogation was allowed. To the same effect is holding of the Supreme Court of Wisconsin in Lashua v. Myhre, 117 Wis. 18, 93 N.W. 811, and of Alabama in Bell v. Bell, 174 Ala. 446, 56 So. 926, 37 L.R.A.(N.S.) 1203.

▇ Nor do we think limitation began **to** run against Spangenberg's rights until the due date of the note executed to him. The lien to which he was, we think, subrogated was not barred when the Slaughter note would have been barred. Though that lien was not kept alive by contract, it inured to the benefit of Spangenberg to the extent of the Slaughter debt paid by him, by virtue of equitable ·subrogation, and should in justice continue until the new note executed by Hays and wife, to that extent, was paid or became barred by limitation. In this regard the new note, to the extent of the amount paid to Slaughter, should in equity be treated as an extension of that indebtedness, and the new note was not barred when this suit was filed. The same equitable doctrine which grants the lien should preserve it as security for the debt evidenced by the new note until that note becomes barred. Dillon v. Kauffman, 58 Tex. 696, 705; Kone v. Harper (Tex.Civ. App.) 297 S.W. 294, 299; Standard Savings & Loan Ass'n v. Davis (Tex.Civ.App.) 85 S.W.(2d) 333. While there may have been cases to the contrary in matters of subrogation, under the holding of the Supreme Court in Hanchett v. Ward, 65 S.W.(2d) 268, the four-year statute of limitations (Vernon's Ann.Civ.St. art. 5527) applies.

▇ The next question presented relates to the amount of the judgment for which foreclosure was decreed against Mrs. Hays' lands. In computing that amount, the trial court allowed interest on the $4,000 note, at the rate of 8 per cent. from March 12, 1924, to November 1, 1926, added such total interest to the $2,872.22 paid to Slaughter, then deducted from such aggregate the $2,-100 paid by Hays in April, 1927; allowed interest on such balance at the rate of 6 per cent. from November 1, 1926, to the date of the judgment, and decreed a foreclosure to that extent. In this we think the court erred. The lien against her lands is not the result of her purported contract and deed of trust of 1924, but these instruments, together with the former valid lien and debt which Spangenberg paid, and the other facts and circumstances of the case, merely vested in Spangenberg an equitable right of subrogation to such lien to secure the $2,872.22 he paid to Slaughter. His rights, therefore, are grounded in equity, not in an enforceable contract. That being true, the lien on her separate lands would extend only to the amount paid to Slaughter, that is $2,-872.22, on March 12, 1924, with interest thereon from that date at the rate of 6 per cent. less a credit of $2,100 on such sum paid on April 11, 1927, and foreclosure would

be authorized against her lands to that extent only. Donaldson v. Meyer (Tex.Com. App.) 261 S.W. 369, 371; Burns v. Ledbetter, 56 Tex. 282.

 By cross assignment appellee complains of the manner in which the costs, including the fee to the guardian ad litem, were taxed. The court decreed that when said property should be sold the proceeds should be applied, first, to the expenses of sale, "and to all costs incurred by the plaintiff herein, including the fee of the guardian ad litem." Appellee contends that these costs, since the plaintiff recovered judgment, should have been collected out of Mrs. Hays' property, and so subordinated to appellee's lien on said property. We do not sustain this contention. The guardian ad litem's fee is taxable, under article 2159, R. S.1925, as a part of the costs. Articles 2051 and 2052, R.S., make each party liable for the costs incurred by him. While article 2056 provides that the successful party shall recover costs against his adversary, in equitable proceedings, the matters of taxing the costs is left largely to a free discretion of the trial court, and when equitably taxed, this discretion should not be interfered with on appeal. 11 Tex.Jur. § 3, p. 229. In cases where the appointment of a guardian ad litem is required, his fee as an item of costs has been held to have been "incurred" by the plaintiff by bringing such suit. Ashe v. Young, 68 Tex. 123, 3 S.W. 454; Mitchell v. Mitchell, 80 Tex. 101, 15 S.W. 705; Pryor v. Krause (Tex.Civ.App.) 168 S.W. 498; 11 Tex.Jur. 263. While the court decreed a foreclosure upon the lands of Mrs. Hays in the instant case, the relief granted against her fell far short of what the plaintiff sought. To the extent, therefore, of the relief denied, the plaintiff was not the successful party, and the court would clearly have been authorized to tax this item of costs, in its discretion, against the appellee. This was not done, however, and the decree merely provided that same be paid out of the proceeds of the sale of her property. The guardian ad litem's fee, under the statute, falls within the same category as the other costs of suit, and the judgment providing for payment first of such costs out of the proceeds of sale of said lands was proper.

We accept as correct appellants' computation of the amount for which foreclosure of appellee's lien on Mrs. Hays' property was authorized under the rule above announced. That is, in the sum of $1860, instead of the sum of $2,357.67, as decreed by the court. This amount represents the total debt of $2,872.22 paid to Slaughter on March 12, 1924, with interest thereon at the rate of 6 per cent. to April 11, 1927, at which date it was entitled to a credit of $2,100 paid; and the balance with 6 per cent. thereon to date of the judgment. The judgment of the trial court will be reformed, therefore, so as to authorize a foreclosure of appellee's lien on the lands involved to the extent of $1,860, only, with interest from the date of said judgment, instead of foreclosure to the extent of $2,357.67 as decreed by the trial court. As so reformed, the judgment of the trial court will be affirmed.

Reformed and affirmed.