COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-06-288-CV

JENNIFER HULEN AND JAMES HULEN APPELLANTS

V.

JOE HAMILTON APPELLEE

------------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Introduction

This suit involves the doctrine of equitable subrogation.  Appellee Joe Hamilton paid off the $80,000 purchase money lien on the home of his ill friend Donna Hulen, with whom he had a long-term close relationship.  Donna died on April 6, 2003, leaving a will that devised all of her property, including her home, to her two adult children, Appellants Jennifer and James Hulen.  
Joe filed this suit, seeking a declaratory judgment that he was entitled to be equitably subrogated to the prior lien.  After a bench trial, the trial court granted Joe an equitable lien on the property.  Jennifer and James appeal.  We affirm.

Factual and Procedural Background

In 1996, Donna purchased the home that is the subject of this litigation for $87,000.  At the time of the purchase, Donna signed a promissory note made payable to the Colson Mortgage Company, as well as a deed of trust securing the loan.  Colson assigned the note and deed of trust to First Nationwide Mortgage Corporation.  Four years later, Donna became ill from diabetes and lost her job.  She applied for and received disability benefits but was unable to make the mortgage payments on the house.  Joe paid off the mortgage in 2001, writing a check to First Nationwide for $80,000.  Joe also paid property taxes assessed against the property in 2001 and 2002.     

Joe testified that, on the night of Donna’s death in 2003, James acknowledged to him, in Jennifer’s presence, that “he knew [Joe] had paid for the house” and that, therefore, “the house was [Joe’s].”  Jennifer sat in silence during this discussion and did not express any disagreement with James’s assertion.  Joe testified that, at that time, he proposed the options to Jennifer of either retaining the home and repaying him the $80,000 in interest-free installments or selling the home and reimbursing him out of the proceeds of the sale.  According to Joe, Jennifer agreed to his proposal but did not specify which of the two repayment options she would pursue.  Jennifer and James denied making any agreement with Joe. 

Joe testified that shortly thereafter, Jennifer refused to have any further communication with Joe or repay him any of the money that he had paid on Donna’s behalf.  Instead, one month after Donna’s death, Jennifer moved into the house and began claiming it as her homestead.  Joe sued Jennifer and James, seeking a declaration that, as a result of having paid off Donna’s mortgage, he was equitably subrogated to First Nationwide’s deed of trust lien against the property to prevent unjust enrichment.  The parties tried the case to the bench, and the trial court ultimately rendered judgment in favor of Joe and awarded him $6,000 in attorney’s fees.   

The trial court  made findings of fact and conclusions of law.  In particular, the trial court found as a fact that “Joe Hamilton was not a mere stranger voluntarily paying off the mortgage to the Property.”  Among the trial court’s conclusions of law are the conclusions that Joe is entitled to equitable subrogation to the rights of First Nationwide to prevent unjust enrichment, that he is entitled to a declaration that he has an $80,000 lien on the property, that substantial equities favor the granting of equitable subrogation in favor of Joe, and that Joe is entitled to $6,000 in attorney’s fees under the Declaratory Judgments Act. 
 Jennifer and James appealed and filed separate briefs under the same appeal number.

Standard of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury’s answers to jury questions.  
Anderson v. City of Seven Points
, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court’s findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury’s findings.  
Ortiz v. Jones
, 917 S.W.2d 770, 772 (Tex. 1996); 
Catalina v. Blasdel
, 881 S.W.2d 295, 297 (Tex. 1994).

A legal sufficiency challenge may only be sustained when:  (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998), 
cert. denied
, 526 U.S. 1040 (1999); Robert W. Calvert, “No Evidence” and “Insufficient Evidence” Points of Error, 38 
Tex. L. Rev.
 361, 362-63 (1960).  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could, and disregard evidence contrary to the finding unless a reasonable fact-finder could not.  
City of Keller v. Wilson
, 168 S.W.3d 802, 827 (Tex. 2005).

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts.  
Citizens Nat’l Bank v. City of Rhome
, 201 S.W.3d 254, 256 (Tex. App.—Fort Worth 2006, no pet.); 
Dominey v. Unknown Heirs and Legal Representatives of Lokomski
, 172 S.W.3d 67, 71 (Tex. App.—Fort Worth 2005, no pet.).

Discussion

In five issues, Jennifer argues (1) that the evidence is legally and factually insufficient to support the elements for imposition of a lien under the doctrine of equitable subrogation; (2) that the lien imposed by the trial court on Jennifer’s homestead violates the statute of frauds; (3) that the lien violates the homestead protections provided by the Texas constitution and statutory law; (4) that the trial court erred by awarding attorney’s fees under the Declaratory Judgments Act because the Act does not apply to this dispute; and (5) that the trial court’s award of attorney’s fees was inequitable and unjust.  In four issues, James argues (1) that the evidence does not support the trial court’s finding of an agreement between the parties; (2) that the trial court erred by finding that Joe is entitled to equitable subrogation; (3) that the trial court erred by awarding attorney’s fees to Joe; and (4) that the trial court erred by implying the existence of an agreement between Joe and James.

Preservation of Error

Jennifer’s first issue and James’s second issue both challenge the trial court’s conclusion that Joe is entitled to an equitable lien on the property.  Specifically, both Jennifer and James argue that there is no evidence to support the trial court’s finding that Joe “was not a mere stranger voluntarily paying off the mortgage to the Property” and that because he was a volunteer, he is not entitled to equitable subrogation.

Before we reach the merits of Jennifer’s first and James’s second issues, we must determine whether they have adequately preserved error for our review.  Joe argues that Jennifer’s and James’s briefs fail to specifically attack any of the trial court’s findings of fact.  Thus, Joe contends, the trial court’s unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the findings.  
See McGalliard v. Kuhlmann
, 722 S.W.2d 694, 696 (Tex. 1986); 
Cohen v. Sims
, 830 S.W.2d 285, 287-88 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

While it is true that Jennifer’s and James’s respective issues are broad and do not reference with specificity any of the trial court’s findings, it is clear from the substance of their briefs that they are challenging the legal and factual sufficiency of the evidence to support the trial court’s factual findings that Joe and Donna agreed that he would be subrogated to the lienor’s rights against the property and that Joe did not pay the debt voluntarily.  
See
 
Tex. R. App. P.
 38.1(e) (stating that appellate “point will be treated as covering every subsidiary question that is fairly included”); 
Zagorski v. Zagorski
, 116 S.W.3d 309, 315 n. 2 (Tex. App.— Houston [14th Dist.] 2003, pet. denied) (op. on reh’g) (rejecting argument that, because her points did not challenge specific findings of fact or conclusions of law, appellant waived her appellate argument).  Accordingly, we will examine the record under the applicable legal and factual sufficiency standards to determine whether the evidence supports the trial court’s finding.

B. Equitable Subrogation and Unjust Enrichment

Under the doctrine of equitable subrogation, a third party who pays a debt on behalf of the debtor may under certain circumstances be subrogated to the creditor’s security interest for the debt that has been discharged.  
First Nat’l Bank of Kerrville v. O’Dell
, 856 S.W.2d 410, 415 (Tex. 1993)
; Smart v. Tower Land & Inv. Co.
, 597 S.W.2d 333, 337 (Tex. 1980).  The doctrine allows a person, not acting voluntarily, who pays the debt owed by another, to seek repayment from the person who in equity and good conscience should repay it.  
Matagorda County v. Texas Ass’n of Counties County Gov’t Risk Mgmt. Pool, 
975 S.W.2d 782, 785 (Tex. App.—Corpus Christi 1998),
 aff’d
, 52 S.W.3d 128 (Tex. 2000).  The courts of Texas have always been hospitable to the right of equitable subrogation and have been in the forefront of upholding it.  
Argonaut Ins. Co. v. Allstate Ins. Co., 
869 S.W.2d 537, 541-42 (Tex. App.—Corpus Christi 1993, pet. denied) (quoting 
McBroom-Bennett Plumbing Inc. v. Villa France, Inc.
, 515 S.W.2d 32, 36 (Tex. Civ. App.—Dallas 1974, writ ref’d, n.r.e.).  The purpose of the doctrine is to prevent the unjust enrichment of the debtor who benefitted from the payment. 
First Nat’l Bank of Kerrville, 
856 S.W.2d at 415.  If entitled to full subrogation, the payor is allowed to enforce the rights available to the creditor, such as rights against the debt’s security.  
Id.

Preliminarily, Jennifer contends that the sole theory pleaded by Joe was equitable subrogation and that he failed to plead unjust enrichment as a cause of action.  However, unjust enrichment, itself, is not an independent cause of action but rather “characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay.”  
Friberg-Cooper Water Supply Corp. v. Elledge
, 197 S.W.3d 826, 832 (Tex. App.—Fort Worth 2006)
 (quoting 
Walker v. Cotter Props., Inc
., 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.)), 
rev’d on other grounds
, 240 S.W.3d 869
 (Tex. 2007)
; 
Mowbray v. Avery
, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied).  

Both James and Jennifer further contend that there is no evidence of an agreement between Joe and Donna that would entitle Joe to a claim for equitable subrogation.  However, the doctrine of equitable subrogation is always given a liberal interpretation and is broad enough to include every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which, in equity and good conscience, should be paid by the latter.  
Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.
, 236 S.W.3d 765
, 774 (Tex. 2007); 
Smart v. Tower Land & Inv. Co.
, 597 S.W.2d 333, 337 (Tex. 1980) (holding doctrine may be invoked to prevent unjust enrichment “when one person confers upon another a benefit that is not required by legal duty or contract”).  The doctrine applies to disputes in which there is no actual contract, based on the equitable principle that one who receives benefits that would be unjust for him to retain ought to make restitution.  
Friberg-Cooper
, 197 S.W.3d at 832; 
Frymire Engineering Co. v. Jomar Int’l, Ltd.,
 194 S.W.3d 713, 716 (Tex. App.—Dallas 2006, pet. granted); 
Mowbray
, 76 S.W.3d at 679. 

The “Volunteer” Exception

One who pays the debt of another as a mere “stranger” or “volunteer” is not entitled to equitable subrogation.  
First Nat’l Bank of Kerrville
, 856 S.W.2d at 415; 
Smart
, 597 S.W.2d at 337.  Both 
First Nat’l Bank of Kerville
 and 
Smart
 cite the 1890 Texas supreme court case 
Oury v. Saunders
 for this proposition.  77 Tex. 278, 280, 13 S.W. 1030, 1031 (1890).  In 
Oury
, the supreme court adopted the “volunteer” exception to recovery for equitable subrogation as explained by a hornbook:

It is a general rule that when persons are compelled to pay the debt of another, where they are obligated to pay it as a surety, when a junior mortgagee pays off a prior mortgage, or, having an interest in the property, discharges an incumbrance, subrogation will follow. Sheld. Subr. § 3. It is said by the same author that ‘the doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another without any assignment or agreement for subrogation, without being under any legal obligation to make the payment, and without being compelled to do so for the preservation of any rights or property of his own.’ Such a payment would extinguish the debt. Id. §§ 240, 241.

Id.
  The hornbook cited as “Sheld. Subr.” is 
Sheldon: The Law of Subrogation 
(Henry Newton Sheldon, 1882), long out of print but available as scanned images on the Google Books web site.
(footnote: 2)
 Sheldon recognized a circumstance that would preclude the “volunteer” exception from preventing recovery that was not implicated by the facts of 
Oury
, 
Smart
, or 
First Nat’l Bank of Kerville
, that is, one who lends money to an infant to buy necessaries or pay debts for necessaries is allowed to hold the infant liable therefor by subrogation to the rights of the person furnishing the necessaries, even if the payor is a volunteer and a stranger.
  Sheldon: The Law of Subrogation 
§ 243.

Later developments in the law of subrogation and unjust enrichment have expanded the situations in which payment for “necessaries” will support equitable subrogation even by a volunteer beyond those involving infants, as recognized by Sheldon.  The current draft of the Restatement (Third) of Restitution and Unjust Enrichment states:

(1) A person who pays another’s debt for necessaries has a claim in restitution against the other if

(a) the circumstances justify the claimant’s decision to intervene without a prior agreement for reimbursement, and

(b) there is no prejudice to the defendant in substituting a liability in restitution for the original obligation in contract.

Restatement (Third) of Restitution & Unjust Enrichment
 § 22 (Tentative Draft No. 2, 2002).  The comments to section 22 explain the exception:

A decision to perform the defendant’s duty without prior agreement is justified only if the claimant is a proper party to intervene.  Traditional judicial rhetoric denounces unrequested intervention by “volunteers,” “strangers,” and “intermeddlers,” but the content of this limitation . . . necessarily depends on the circumstances of the intervention. . . .

Subsections (1) and (2) refer to obligations contracted for, and obligations to furnish, “necessaries.”  The term is generally understood to refer to such essentials as food, clothing, 
housing
, and medical care, but it is capable of more expansive definition in particular circumstances. . . .

. . . .

[T]he disinterested payment of another’s debts for necessaries, where the debtor suffers no prejudice from the substitution of creditors, will support a claim in restitution in other appropriate circumstances, typically where the debtor encounters difficulty in managing his or her own affairs. . . . So long as the debts to third parties are valid and enforceable, there is prima facie enrichment of the defendant as a result of the payment by the defendant.  

 
 

Id. 
cmt. b-c, f (emphasis added).

Texas courts have been liberal in their determinations that payments were not made voluntarily.  
Argonaut Ins. Co.
, 869 S.W.2d at 541-42; 
see, e.g., Hill v. Watts
, 801 S.W.2d 176, 177 (Tex. App.—Beaumont 1990, writ denied) (holding claimant who paid back taxes on property acquired by fraudulent means not acting as volunteer); 
Tex. Real Estate Comm. v. Century 21 Sec.
 
Realty
, 598 S.W.2d 920, 922 (Tex. Civ. App.—El Paso 1980, writ ref’d n.r.e.) (company repaying its customers who were defrauded by company’s salesman not a volunteer); 
Forney v. Jorrie
, 511 S.W.2d 379, 386 (Tex. Civ. App.—San Antonio 1974, writ ref’d n.r.e.) (husband not a “volunteer” who paid wife’s and her ex-husband’s back taxes to remove a federal tax lien on wife’s  as well as his own bank account).  In 
Hays v. Spangenberg
, a lender under an unenforceable note and deed of trust executed by a woman who was incompetent, in order to remove a prior lien on her property, was held not to be a “volunteer” but equitably subrogated to the rights of the prior lienor where he lent the funds to protect her property and the money was essential to preservation of her estate.  
94 S.W.2d 899, 901 (Tex. Civ. App.—Austin 1936, no writ)
; 
see also Breaux v. Allied Bank of Texas, 
699 S.W.2d 599, 604 (Tex. App.—Houston [14th Dist.] 1985, writ ref’d n.r.e. (holding law implies obligation to pay reasonable value for necessaries furnished to a ward), 
cert. denied
,  479 U.S. 1002 (1986)
; 
Ferguson v. Fitze
, 173 S.W. 500, 501 (Tex. Civ. App. 1914, writ ref’d) (same as to party under disability).      

Application

The facts of this case fall squarely within Restatement section 22’s exception to the voluntary-payment rule.  Joe assisted Donna by paying $80,000 to protect Donna’s home.  Housing is a necessary.  Joe’s testimony established that Donna was having difficulty managing her affairs—specifically, she could not make her house payments—because she was laid off from her job and disabled.  Joe looked after and took care of Donna after she became ill, including paying the taxes on the property, paying for the funeral, and paying for probate of the will.  Donna’s debt to First Nationwide Mortgage was valid and enforceable, and Donna’s estate and therefore her devisees, Jennifer and James, benefitted by Joe’s payment of the debt.  There is no evidence that Donna, Jennifer, or James would suffer any prejudice by substituting Joe for First Nationwide Mortgage as the creditor.  Thus, even assuming, as Jennifer and James argue, that Joe is a “volunteer” and did not have an agreement with Donna regarding subrogation, Joe is entitled to equitable subrogation because the circumstances bring the case within section 22, precluding application of the “volunteer” exception.  

Every case of equitable subrogation is governed by its own facts. 
 First Nat’l Bank of Kerrville
, 856 S.W.2d at 415. The facts and equities of this case support the trial court’s imposition of a lien in Joe’s favor.  Any other result would be a windfall to and unjust enrichment on the part of Jennifer and James.  We therefore overrule Jennifer’s first issue and James’s second issue.

Statute of frauds

In her second issue, Jennifer argues that, assuming Donna orally agreed to grant Joe a lien on the property, the oral agreement would be unenforceable under the statute of frauds; thus, Joe is not entitled to equitable subrogation.  

Jennifer’s argument fails because, as we have noted, equitable relief does not require an enforceable contract.  Equitable subrogation is not dependent upon contract, but arises by operation of law or by implication in equity to prevent injustice.  
Harris v. Am. Protection Ins. Co.,
 158 S.W.3d 614, 622 (Tex. App.—Fort Worth 2005, no pet.).  The principle of unjust enrichment suggests that restitution is an appropriate remedy in circumstances in which the agreement contemplated is unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons.
  City of Harker Heights v. Sun Meadows Land, Ltd.,
 830 S.W.2d 313, 319 (Tex. App.—Austin 1992, no writ).  Thus, the lack of an enforceable contract between Joe and Donna is the very basis for Joe’s equitable claim.  We therefore overrule Jennifer’s second issue.

James makes a similar argument in his first and fourth issues.  He contends that the trial court erred by finding that an agreement existed between James, Jennifer, and Joe, and that if such an agreement did exist, the statute of frauds barred enforcement.  He also argues that if an agreement existed between Jennifer and Joe regarding reimbursement for Joe’s payment, the trial court erred by implying a similar agreement between Joe and James.  For the reasons stated above, Joe’s entitlement to equitable relief does not depend on the existence of an agreement between any of the parties.  Therefore, we overrule James’s first and fourth issues.

Homestead law

In her third issue, Jennifer contends that the trial court erred by imposing a lien because the subject property is her homestead and Texas law forbids imposition of a homestead encumbrance except in certain conditions, which Jennifer argues are not met here.

The Texas constitution protects a homestead from forced sale except for the payment of debts for, among other things, purchase money or the refinance of a lien against the homestead.  
Tex. Const. 
art. 16, § 50.   Likewise, the property code allows a homestead encumbrance for purchase money and the refinance of lien against a homestead.  
Tex. Prop. Code Ann.
 § 41.001(b)(1), (5) (Vernon Supp. 2007).  Jennifer relies on two cases in which courts have disallowed an equitable lien on a homestead, but neither of those cases involve a purchase money lien or the refinance of a lien against a homestead.  
See Hruska v. First State Bank of Deanville
, 747 S.W.2d 783, 785 (Tex. 1988) (holding equitable lien on homestead not available to secure repayment of construction loan); 
Republicbank, Lubbock, N.A. v. Daves
, 770 F.2d 1363, 1367-68 (5th Cir. 1985) (holding bank not entitled to equitable lien on homestead to secure loan for improvements to homestead and office building when bank did not follow statutory requirements for creating valid lien).

Joe paid off the existing purchase money lien on the subject property.  We have already determined that he is entitled to an equitable lien as a result of that payment.  His payment and the equitable lien imposed by the trial court equate to the refinance of a lien against the homestead, which is authorized by both the Texas constitution and the property code.  “One who discharges the vendor’s lien upon lands —even the homestead—“ is entitled to be subrogated to the lien of the creditor to the extent of the payment made, to prevent unjust enrichment.  
First Nat’l Bank of Kerrville
, 856 S.W.2d at 415 (quoting 
Faires v. Cockrill
, 88 Tex. 428, 31 S.W. 190, 194 (1895)).  We therefore hold that the lien imposed by the trial court does not violate the Texas homestead protections.

The Declaratory Judgments Act and Attorney’s Fees

In her fourth issue, Jennifer argues that Joe filed suit under the Declaratory Judgments Act solely as a means to recover attorney’s fees and that declaratory relief is not appropriate.  In her fifth issue, she argues that the trial court’s award of attorney’s fees under the Declaratory Judgments Act is inequitable and unjust. Likewise, James in his third issue argues that the trial court’s award is inequitable.  Joe replies that Jennifer and James failed to preserve these issues for appeal by first raising them in the trial court. 

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a); 
see also
 
Tex. R. Evid.
 103(a)(1).  If a party fails to do this, error is not preserved, and the complaint is waived.  
Bushell v. Dean
, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh’g).  The objecting party must get a ruling from the trial court.  This ruling can be either express or implied.  
Frazier v. Yu,
 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied).  If trial judge refuses to rule, an objection to the refusal to rule is sufficient to preserve error.  
Tex. R. App. P.
 33.1(a)(2).  Legal sufficiency challenges following a bench trial are an exception to the general preservation rule; a party may raise such challenges for the first time on appeal.  
Tex. R. App. P. 33.1
(d); 
Tex. R. Civ. P
. 324(a)-(b).

In this case, neither Jennifer nor James challenged the applicability of the Declaratory Judgments Act or the award of attorney’s fees under the Act at any stage of the trial court proceedings.  Indeed, in her original answer, Jennifer asked the trial court to award 
her
 attorney’s fees under the Act.  Likewise, neither Jennifer nor James challenged the amount of attorney’s fees awarded by the trial court as inequitable or unjust.  We therefore hold that Jennifer and James have failed to preserve these issues for our review—with one exception.

The one exception is Jennifer’s argument that the evidence is legally insufficient to support the trial court’s award of attorney’s fees.  She makes this argument in the broader context of her argument that Joe failed to segregate between the fees attributable to the declaratory judgment and the fees attributable to his equitable subrogation claim—an argument she failed to preserve for our review.  But because a party may raise a claim for legal insufficiency for the first time on appeal following a bench trial, we will briefly consider the sufficiency of the evidence to support the trial court’s award of attorney’s fees.
  

Joe’s counsel testified at trial.  He summarized the work he performed  preparing the case for trial, the time spent doing the work (thirty hours), and his hourly rate ($200 per hour), and he testified that his fee was necessary and reasonable.  Jennifer and James did not cross examine Joe’s counsel or offer evidence of their own.  The trial court awarded Joe $6,000 in attorney’s fees.  We hold that the evidence was legally sufficient to support the award.

We overrule Jennifer’s fourth and fifth issues and James’s third issue.

Conclusion

Having overruled all of Jennifer’s and James’s issues, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and GARDNER, JJ.

CAYCE, C.J. dissents without opinion.

DELIVERED: February 28, 2008

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
http://books.google.com/books?id=oVc9AAAAIAAJ (last viewed Feb. 27, 2008).