**AFFIRMED and Opinion Filed September 17, 2021**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-17-01484-CV**

**PNC MORTGAGE, A DIVISION OF PNC BANK, N.A. SUCCESSOR TO NATIONAL CITY BANK AND NATIONAL CITY MORTGAGE, A DIVISION OF NATIONAL CITY BANK OF INDIANA, Appellants**
**V.**
**JOHN HOWARD AND AMY HOWARD, Appellees**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-01559-2010**

## OPINION ON REMAND

Before Justices Molberg, Reichek, and Garcia
Opinion by Justice Reichek

On remand, the Texas Supreme Court has directed us to consider two issues:

(1) whether the equitable subrogation lien claim asserted in this case is time-barred and (2) whether language in the deed of trust precludes assertion of the subrogation claim. *See PNC Mortg. v. Howard* ("*Howard II*"), 616 S.W.3d 581, 585 (Tex. 2021) (per curiam). Because we conclude the subrogation lien claim brought by PNC Mortgage, a division of PNC Bank, N.A. ("PNC"), is barred by the applicable statute of limitations, we affirm the trial court's judgment declaring any lien or power of

sale held by PNC on the subject property void and unenforceable. Based on our resolution of the first issue, it is unnecessary for us to address the second issue.[1]

The relevant, undisputed facts are as follows. John and Amy Howard purchased a home in 2003 with two purchase-money mortgages. Two years later, the Howards refinanced these mortgages and executed a new note and deed of trust on the property. Using nearly all the proceeds from the refinancing loan, the Howards paid off the two existing mortgages. The new note and deed of trust were later assigned to National City Bank.

In 2008, the Howards stopped making payments on the note. In January 2009, National City Bank notified the Howards they were in default and, unless they cured the default, the maturity date of the loan would be accelerated. The note was then accelerated on June 19, 2009. Shortly thereafter, National City Bank merged with PNC.

All parties agree the acceleration of the note was proper and there is no allegation that the acceleration was abandoned. PNC does not dispute that National City Bank's acceleration is binding on it as the successor in interest on the note and deed of trust. PNC did not initiate foreclosure proceedings against the Howards until more than five years after the note was accelerated. In response to PNC's claim for

---

[1] We note the Howards have stated in their supplemental briefing that "the Supreme Court opinion [in *Howard II*], at least by implication, renders the Howards' argument regarding the language of the deed of trust as having eliminated PNC's ability to seek enforcement of the lien non-viable."

foreclosure, the Howards asserted various affirmative defenses including the statute of limitations.

Under section 16.035 of the Texas Civil Practice and Remedies Code, a suit for foreclosure of a real property lien must be brought within four years after the cause of action accrues. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.035. A cause of action to foreclose on a real property lien accrues when the loan is accelerated. *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also GMAC v. Uresti*, 553 S.W.2d 660, 663 (Tex. App.—Tyler 1977, writ ref'd n.r.e.) ("acceleration" is the change of maturity of a note from future to present). Because PNC did not seek foreclosure until more than five years after the debt was accelerated, PNC's ability to foreclose its deed of trust lien was barred by the statute of limitations. *Id*. PNC does not challenge this result. *See PNC Mortg. v. Howard* ("*Howard I*"), 618 S.W.3d 75, 83–84 (Tex. App.—Dallas 2019), *rev'd on other grounds*, 616 S.W.3d at 585 (Tex. 2021).

Instead, PNC asserts it is entitled to foreclose on the Howards' property based on the doctrine of equitable subrogation. Equitable subrogation allows a third-party who discharges a lien on the property of another to step into the original lienholder's shoes and assume that lienholder's security interest on the property. *LaSalle Bank Nat'l Ass'n v. White*, 246 S.W.3d 616, 619 (Tex. 2007) (per curiam). Under this doctrine, if the contractual lien created as part of the refinancing is infirm for some

reason, the lender can assert whatever lien rights were held by the previous lender whose loan was paid off. *Howard II*, 616 S.W.3d at 585.

Recently, in *Federal Home Loan Mortgage Corp. v. Zepeda*, 601 S.W.3d 763, 769 (Tex. 2020), the supreme court answered a certified question from the Fifth Circuit Court of Appeals and held that a refinancing lender's negligence in preserving its contractual rights does not deprive it of its right to enforce an equitable subrogation lien. This is because the lender's equitable rights arise and become fixed at the time the proceeds from the refinancing loan are used to discharge the earlier debt and are not affected by the new lender's subsequent conduct. *Id.* But the conduct at issue in *Zepeda* was the lender's failure to resolve a curable defect in the loan documents signed at closing, an infirmity not present in the loan to which the lender became subrogated. In contrast, the "infirmity" in PNC's deed of trust lien – the expiration of the limitations period – is, as explained below, as much a problem for the subrogation lien as it is for the deed of trust lien. While subrogation may permit a new lender to assume the prior lender's lien position, the rights assumed by the new lender are limited to only those that could have been asserted by the prior lien holder. *Howard II*, 616 S.W.3d at 584–85; *see also Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007).

PNC correctly asserts there is no specific statute of limitations for subrogation actions. *Brown v. Zimmerman*, 160 S.W.3d 695, 700 (Tex. App.—Dallas 2005, no pet.). Instead, the action is subject to the same statute that would apply had the action

–4–

been brought by the subrogee. *Guillot v. Hix*, 838 S.W.2d 230, 233 (Tex. 1992). In this case, if the original lender had brought a suit to enforce its real property lien, the suit would be governed by the four-year limitations period found in section 16.035. *Zimmerman*, 160 S.W.3d at 701. Accordingly, the same statute governs PNC's subrogation action seeking that relief. *Id*.

The more difficult issue is determining when PNC's cause of action to enforce its subrogation lien accrued. A claim to foreclose a real property lien must be based on the borrower's failure to pay a secured debt that has either matured under its own terms or had its maturity properly accelerated. *See Wilmington Tr. Nat'l Ass'n. v. Rob*, 891 F.3d 174, 177–78 (5th Cir. 2018); *Famous Koko, Inc. v. Member 1300 Oak, LLC*, No. 05-17-00906-CV, 2018 WL 6065256, at *3 (Tex. App.—Dallas Nov. 20, 2018, no pet.) (mem. op.). Limitations on the lien claim begins to run on the date of maturity. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). Because a refinancing lender steps into the shoes of the original lender in a subrogation claim, the question arises as to whether the maturity date of the original loan or of the refinancing loan controls. Unfortunately, Texas case law gives conflicting answers to this question.

The issue was first addressed nearly one hundred years ago in *Kone v. Harper*, 297 S.W. 294 (Tex. Civ. App. – Waco 1927), *aff'd*, 1 S.W.2d 857 (Tex. Comm'n App. 1928). In *Kone*, the debtor asserted that limitations barred the refinancing lender's subrogation claim because the debt that had been paid off had a maturity

date of more than four years before the foreclosure suit was brought. *Id*. at 299. The debtor contended that, because the refinancing lender steps into the shoes of the original lender for purposes of subrogation, the maturity date of the original loan should control for limitations purposes. The Waco court disagreed, stating that the refinancing acted in the same way as if the original debt had been renewed and extended and, therefore, the relevant maturity date was the one for the new loan. *Id*. at 299-300. Ten years later, in *Hays v. Spangenberg*, 94 S.W.2d 899 (Tex. Civ. App. – Austin 1936, no writ), the Austin court followed *Kone* and held that limitations begins to run on a subrogation claim on the "due date" of the refinancing loan, rather than the date the paid-off loan would have become due. *Id*. at 902.

In 2005, this Court addressed a debtor's assertion of limitations as a defense to a subrogation lien claim in *Brown v. Zimmerman*, 160 S.W.3d at 701. Although we did not directly address the lien claim's accrual date, two opinions out of the United States District Court for the Southern District of Texas, *Gillespie v. Ocwen Loan Servicing, LLC* and *Zepeda v. Federal Home Loan Mortgage Ass'n*, have read *Zimmerman* to hold that an equitable subrogation lien claim accrues at the time the original loan is paid off. *See Gillespie v. Ocwen Loan Servicing, LLC*, No. 4:14-CV-00279, 2015 WL 12582796, at \*4 n.5 (S.D. Tex. Oct. 28, 2015); *Zepeda v. Fed. Home Loan Mortg. Ass'n.*, No. 4:16-cv-3121, 2018 WL 781666, at \*5 (S.D. Tex.

Feb. 8, 2018), *rev'd*, 967 F.3d 456 (5th Cir. 2020).[2] We do not agree with this reading of our opinion.

The facts in *Zimmerman* were unusual. The case began as a divorce action. *Zimmerman*, 160 S.W.3d at 699. Husband was the founder and president of a bank that refinanced a home loan debt owed by Wife. *Id*. at 698–99. Husband and Wife then signed a separate contract in which they agreed to pay off the refinancing note with proceeds from their life insurance policies. *Id*. at 699. Shortly thereafter, the parties divorced and the separate agreement to pay off the loan was nullified by the trial court. *Id*. Although the real property made the subject of the loan was awarded to Wife, the divorce decree did not address the parties' liability on the refinancing note, and Husband's bank placed a lien on the property. *Id*. Based on these facts, and the unique loan repayment plan, it was unclear when the maturity date of the refinancing loan would have been. But, because the bank's subrogation lien claim was brought less than four years after the refinancing occurred, there was no possible maturity date for the new loan that would have been outside the limitations period. Accordingly, our reference to the date of the refinancing was not to suggest that this was when the claim accrued, but to show that the bank's subrogation action was necessarily brought timely because the note could not have matured more than four years before suit was filed.

---

[2] This is the same *Zepeda* case that was the subject of the certified question in *Federal Home Loan Mortgage Corp. v. Zepeda*, 601 S.W.3d 763 (Tex. 2020).

In addition, both *Gillespie* and *Zepeda* cite *Kone* and *Hays* for the proposition that a claim for equitable subrogation accrues on the maturity date of the underlying debt secured by the prior lien. *Gillespie*, 2015 WL 12582796, at *4; *Zepeda*, 2018 WL 781666, at *5. As shown above, we read *Kone* and *Hays* as reaching the opposite conclusion. *See Kone*, 297 S.W. at 299; *Hays*, 94 S.W.2d at 902. Two other Texas federal courts have since followed *Gillespie* and *Zepeda* to conclude that the limitations period on an equitable subrogation lien claim begins to run on the maturity date of the note paid off in the refinancing. *See Priester v. Long Beach Mortg. Co.*, No. 4:16-cv-00449, 2018 WL 1081248, at *4 (E.D. Tex. Feb 28, 2018); *De La Cruz v. Bank of New York*, No. A-17-CV-00163-SS, 2018 WL 3018179, at *6 (W.D. Tex. June 15, 2018). All four federal opinions also appear to hold that a subrogation claim could accrue long after the maturity date of the refinancing loan, and *De La Cruz* seems to suggest that acceleration of the refinancing debt may not similarly accelerate the maturity of the original debt. *See De La Cruz*, 2018 WL 3018179, at *6. We view the potential problems created by these holdings as manifold.

Tying the accrual date of the subrogation action to the maturity of the underlying debt recreates the issue resolved in *Kone* and *Hays*. Under the federal cases, if a borrower defaults on a refinancing loan more than four years after the maturity date of the original loan, the refinancing lender no longer has a viable subrogation lien claim. This would severely limit the purpose of equitable

–8–

subrogation. As the court said in *Hays*, "[t]he same equitable doctrine which grants the lien should preserve it as security for the debt evidenced by the new note until that note becomes barred." *Hays*, 94 S.W.2d 899.

The reverse scenario is equally problematic. If the maturity date of the original debt is well beyond the maturity date of the refinancing loan, the borrower could arguably be subjected to a subrogation claim many years after the loan became due. Such a result would render the limitations period practically meaningless. It would also potentially force the refinancing bank to wait for an extended period of time after the maturity date of its loan before being able to enforce the subrogation lien.

PNC attempts to resolve this dilemma by arguing that, even though the subrogation lien claim is triggered by the due date of the original loan, the time within which to bring the lien claim is limited to the period in which the refinancing note is "collectable," which is six years after the note matures or its maturity is accelerated. *See* TEX. BUS. & COM. CODE ANN. § 3.118(a). But PNC fails to explain how its subrogation lien claim is enforceable if it has not yet accrued. PNC also fails to explain how the debt can have matured for purposes of its note claim, but not for purposes of its lien claim.

Furthermore, neither PNC nor the federal cases address why acceleration of the refinancing debt would not similarly accelerate the maturity of the original debt. Although the legal fiction of the original debt continues for subrogation purposes,

–9–

there is still only one debt. Once accelerated, that one debt is mature. *See Uresti*, 553 S.W.2d at 663. And once mature, any claim to enforce a lien securing that debt accrues. *Khan*, 371 S.W.3d at 353.

We conclude the correct result is the one first reached by *Kone* in 1927. The lender's cause of action to enforce its subrogation lien rights accrues on the date the refinancing loan matures. *Kone*, 297 S.W. at 299. If the maturity of the refinancing loan is accelerated, the debt is mature for purposes of both the lender's contractual rights and its subrogation rights. In this case, that date was June 19, 2009, when the Howards' refinancing loan was accelerated.

Relying on *Kone* and *Hays*, PNC argues that, even if its lien claim accrued when the loan was accelerated, its "equitable lien" should not be subject to the same limitations period as a contractual lien. PNC contends that a lien obtained through equity should be valid for as long as the bank can recover on the note secured by the lien. Although *Kone* and *Hays* contain language that the right to enforce a subrogation lien should extend for as long as the right to collect on the refinancing note, both cases were decided decades before the legislature enacted section 16.035 of the civil practice and remedies code which created a four-year limitations period for lien claims separate from the four-year limitations period for suits on a debt. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§16.035, 16.004 (effective September 1, 1985). When the legislature later created a longer six-year limitations period for suits on negotiable instruments, it did not similarly extend the time within which a

party must bring a claim to enforce a lien securing a negotiable instrument. *See id*. § 16.035; TEX. BUS. & COM. CODE ANN. § 3.118(a) (effective January 1, 1996). Accordingly, the legislature has determined that limitations on lien rights need not be commensurate with limitations on collection rights. "[T]he right to collect and the right to seek a forced sale are two quite different things." *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996) (quoting *U.S. v. Rodgers*, 41 U.S. 677, 691 (1983)).

What PNC has is an equitable right of subrogation to the previous lender's contractual lien. All suits for the recovery of real property under a real property lien or for the foreclosure of a real property lien are subject to the four year limitations period. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.035. PNC cannot, in the name of equity, have more rights than the party to which it is subrogated, and those rights are subject to the same defenses the borrower would have had against the original lender. *See Mid-Continent*, 236 S.W.3d at 774. If this claim had been brought by the original lender, it would have to have been filed within four years after the debt matured. *Zimmerman*, 160 S.W.3d at 700. Because PNC did not file its subrogation lien claim within four years after the date the debt was accelerated, it is time-barred.

We affirm the trial court's judgment declaring any lien or power of sale held by PNC on the Howards' property void and unenforceable.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

171484F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PNC MORTGAGE, A DIVISION OF PNC BANK, N.A. SUCCESOR TO NATIONAL CITY BANK AND NATIONAL CITY MORTGAGE, A DIVISION OF NATIONAL CITY BANK OF INDIANA, Appellants

No. 05-17-01484-CV     V.

JOHN HOWARD AND AMY HOWARD, Appellees

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-01559-2010.
Opinion delivered by Justice Reichek. Justices Molberg and Garcia participating.

In accordance with this Court's opinion of this date, the judgment of the trial court declaring any lien or power of sale held by PNC MORTGAGE, A DIVISION OF PNC BANK, N.A. SUCCESOR TO NATIONAL CITY BANK on the property of JOHN HOWARD AND AMY HOWARD void and unenforceable is **AFFIRMED**.

It is **ORDERED** that appellees JOHN HOWARD AND AMY HOWARD recover their costs of this appeal from appellant PNC MORTGAGE, A DIVISION OF PNC BANK, N.A. SUCCESOR TO NATIONAL CITY BANK AND NATIONAL CITY MORTGAGE, A DIVISION OF NATIONAL CITY BANK OF INDIANA.

Judgment entered September 17, 2021